ELLEN BURKE, ADMINISTRATRIX, *v.* THE NORWICH AND WOR-
CESTER RAILROAD COMPANY.

A master is not liable to a servant for an injury to the latter caused by the miscon-
duct or negligence of a fellow-servant in the course of the employment.

The soundness of this rule is questionable, but it seems to be well established.

The servants of a contractor are the servants of his principal only where the
latter has the right to select and control them.

A railroad company to which coal was delivered by vessels, undertook to remove it
from the vessels to their cars at a fixed price per ton paid by the masters of the
vessels, and employed *N*, who was in their service as a weigh-master, to do the
shovelling and dumping, using a stationary hoisting engine belonging to the com-
pany, and employing his own help, and receiving a certain price per ton. *N*
hired *B* as a shoveler, and *B* was killed, while in the employment, by a car being
backed upon him without notice by the servants of the company. The wages of
*B* were not paid by the company and his name was not entered on their pay roll.
In a suit brought by his administratrix against the company, in which the latter
claimed that *B* was their servant and that they were therefore not liable for the
injury, the court charged the jury that if the company had control of *B* and
could have discharged him without breaking their contract with *N*, or if *N* was
their agent in employing him, then he was in the employment of the company,
but that if *N* was an independent contractor and hired *B* as such, and the com-
pany could not control or discharge him, then he was not. Held, on a motion
of the defendants for a new trial—1. That the charge was unexceptionable·
2. That on the facts the jury properly held that *B* was not the servant of the
company.

ACTION on the case, for an injury to Daniel Burke, caused
by the negligence of the defendants, brought by his adminis-
tratrix, to the superior court in New London county, and
tried to the jury on the general issue, before *Butler, J.*

On the trial it appeared and was conceded that the defend-
ants were engaged in the general business of transporting
passengers and freight from Norwich to Worcester and inter-
mediate places, and coal formed a. considerable item of the
freight. The coal was brought by vessels and transferred to
the cars of the defendants at a wharf owned by them. To
that wharf the defendants had run a turn-out, connecting
with their main track a short distance above and below the
wharf. At about the centre of that turn-out, where it ap-

proached the edge of the wharf, the defendants had placed scales, which were crossed by the turn-out track. Empty cars were run to the upper end of the turnout, and left there for the purpose of being loaded; and the loaded cars were drawn out at the other end, when a sufficient number were loaded and had accumulated there to make up a train. When a car was to be loaded it was run upon the track on the scales, and the coal shoveled into tubs in the hold of the vessel, the tubs hoisted by the engine and swung over the car, and dumped, until the scales indicated that the required quantity had thus been placed upon the car, when that car was run off to the lower end of the turn-out, and another run on to receive a load. The shoveling and dumping were done by a gang of five men, for a certain sum per ton, which they divided among them. The hoisting was done by a stationary engine owned and worked by the company. The whole work was superintended by a weigh-master, named O'Neil, employed for that purpose by the company.

By the usage of trade the shoveling of the coal was a part of the delivery and the duty of the vessel, and shovelers were formerly employed by them. But the company, having a stationary engine for hoisting, and being often desirous of working extra time when there was a press of business, assumed the entire duty of delivery, for a fixed allowance per ton, made to them by the masters of the vessels. The company then employed the gang of shovelers. But just prior to the injury complained of, the company, having a difficulty with the gang of shovelers, of which the deceased was one, and who were on a strike, made an arrangement with O'Neil, their then weigh-master, to the effect that they would allow him, as a distinct matter, a certain sum per ton for shoveling and dumping the coal, and he should employ the shovelers, and if he could get them for less than the sum allowed him, the difference should be his perquisite, independent of his regular wages as weigh-master. And thereupon and thereafter O'Neil hired the squad of shovelers by the ton, made returns weekly to the office of the company of the number of tons shoveled, and, receiving the amount allowed him for

shoveling and dumping, gave the gang the portion of it which was agreed upon between him and them, and retained a balance as his own. The regular pay rolls of the employees of the company, including O'Neil as weigh-master, were made up and settled monthly, and did not embrace the shovelers. They considered themselves as the employees of O'Neil. This arrangement existed, and the shovelers were so employed, when Burke was killed.

It further appeared, and was not denied, that when Burke was killed, a car had just been loaded and was about to be run off the scales to make room for another; that Burke was at the end of the car, to assist in shoving it off as the shovelers usually did; that a train of empty cars was being backed upon the turnout, and that one or more empty cars, that were standing upon it, were bumped or shoved down by that train, without warning, against the loaded car, crushing Burke between them and injuring him fatally.

The parties were at issue on the question whether Burke was in the exercise of ordinary care; whether the accident was unavoidable under the circumstances, or whether occasioned by negligence; whether that negligence consisted in the negligent management of the train of empty cars by the person in charge, or whether in causing such a train to be backed down without being properly lighted and manned; but chiefly upon the question whether Burke was or was not so an employee of the company that they were exempt from liability, if the negligence consisted in the careless management on the turn-out, by the servants of the company, of a train of empty cars, otherwise properly manned and run.

The plaintiff claimed to have proved, in addition to the above facts, that the business of shoveling and dumping the coal was an independent business, belonging to the vessels which brought the coal; that O'Neil in undertaking to do it engaged so far forth in an independent and special though auxiliary business; that the shovelers were in his employ and his only; that they paid him a fixed sum per ton, and he employed and discharged the men as he pleased; and that the men were not under the control of or liable to be dis-

charged by the company. And the plaintiff further claimed to have proved that the train of empty cars was knowingly sent to back down upon the turn-out by the officers of the company, in the evening, without any light on the advancing rear end of the train, and in charge of a drunken, incompetent brakeman, who gave no signal, and that the negligence of the company in so doing caused the death of Burke, and that they were responsible whether Burke was an employee or not ; and the plaintiff asked the court to charge in accordance with these claims.

The defendants claimed, and offered evidence to prove, that the train of empty cars was properly manned, and under the charge of a competent and sober man ; and that the accident was caused by a mistake in coupling the cars, made by the brakeman in charge, by reason of which motion was communicated to an empty car which struck and hit Burke ; and that Burke, although hired by O'Neil, was nevertheless engaged in the general business of the company as a subservant, and could be dischaaged by them at will, and that therefore they were not liable ; and they prayed the court to charge the jury in accordance with their claims, and particularly as follows : " that if Burke was in the employment of O'Neil, and O'Neil was in the employ of the company, then if Burke was employed in the same general business in which O'Neil was employed, and the company had the control of Burke, and the power of discharging him when they chose, the rule that a master is not liable to one servant for injuries received by the negligence of a fellow-servant, would apply, and the plaintiff could not recover," and this claim the counsel insisted was sustained by the case of *Wiggett* v. *Fox,* 36 Eng. Law & Eq. R. 486.

The court charged on this point as follows : "If Burke was an employee of the railroad company the plaintiff cannot recover. So far the claim is correct, although there are exceptions to the rule to be hereafter noticed, where the negligence is that of the company and not of their servants merely. But it is not correct to the extent the plaintiff presses it. I do not think the English case relied upon goes

so far as to hold that an independent contractor, employed to do an incidental and auxiliary business, which does not necessarily expose his servants to the hazards of the general business, makes those servants so the employees of the company that they should be holden, as employees, to have assumed the risks of the general business and the negligence of its servants. No American case, it is conceded, has gone so far. You will then look at the facts as admitted or claimed to be proved by the parties, and determine what was the nature of Burke's employment, and by whom employed.

" Coal is ordinarily brought in vessels, and it is the independent duty of the vessels to deliver it. The defendants assumed that duty for a consideration, and afterwards made a special contract with O'Neil to do that part of it which consisted of shoveling and dumping, and for that purpose he hired Burke. Now, as I view the law, I must leave it to you upon all the evidence as a question of fact, to say whether Burke was so in the employ of O'Neil only as an independent contractor, or in the employ of the company in their business. Had the company the control of him ? Could they discharge him without breaking their special contract with O'Neil ? If they could, or O'Neil was their agent in employing him, then he was in their employ and the plaintiff cannot recover. But if O'Neil, as to the shoveling and dumping— the delivery of the coal—was such an independent contractor, (although otherwise employed by the defendants in their general business), and hired Burke as such, and the defendants could not control or discharge Burke without breaking up their special contract with O'Neil respecting the delivery of the coal, then, in my opinion, Burke was not so an employee of the defendants that the rule will apply. Whether an employee of the company or not, therefore, so as to be subject to the rule, it is for you to determine."

The jury returned a verdict for the plaintiff for $2,000 damages, and the defendants moved for a new trial for error in the charge.

*Wait* and *Halsey,* in support of the motion, cited *Morgan*

v. *Vale of Neath Railway Co.*, Law Reports, 1 Q. B., 149 ; *Wiggett* v. *Fox*, 36 Eng. Law & Eq. R., 486; *Degg* v. *Midland Railway Co.*, 40 id. 376 ; *Hando* v. *London, Chatham & Dover Railway Co.*, Law Reports, 2 Q. B. 439, note. 1 Redfield on Railways, 3d ed. 506.

*Pratt*, contra, cited *Milligan* v. *Wedge*, 12 Ad. & El. 737 ; *Rapson* v. *Cubitt*, 9 Mees & Wels., 710 ; *Knight* v. *Fox*, 1 Eng. L. & Eq. R., 477 ; *Overton* v. *Freeman*, 8 id. 479 ; *Steel* v. *South Eastern Railway Co*, 32 id. 366 ; *Reedie* v. *London & N. Western Railway Co.*, 4 W. H. & G. 244 ; *Hole* v. *Sittingbourn & Sheerness Railway Co.*, 6. Hurlst & Nor., 488 ; *Hilliard* v . *Richardson*, 3 Gray, 349 ; *Kelly* v. *Mayor &c. of New York*, 1 Kerw., 432 ; *Pack* v. *Mayor &c. of New York*, 4 Seld., 222 ; *Schular* v. *Hudson River R. R. Co.*, 38 Barb., 653 ; *Louisville & Nashville R. R. Co.* v. *Collins*, 5 Am. Law Reg. N. S., 265, 272 ; 1 Am. Lead. Cases, 649 ; 1 Redfield on Railways, 3d ed, 506, 510.

McCURDY, J. The principle relied upon by the defendants, that a master is not liable to a servant for an injury to him occasioned by the misconduct or negligence of a fellow-servant, has been so often recognized both in this country and in England that it must now be considered as settled law. Two reasons are usually assigned for the rule ; 1st. That the employed must be supposed to have contracted with reference to the perils of the business, including those which may arise from the character and conduct of his fellow employees ; and 2d. That public policy requires that each servant should be influenced by its operation to be not only careful of his own doings, but as watchful as possible over the acts of his associates. *Farwell* v. *Boston & Worcester R. R. Co.*, 4 Met., 49.

The justness of this reasoning has been questioned by high judicial authority. *Little Miami R. R. Co.* v. *Stevens*, 20 Ohio, 435. However plausible may be the theory, it is very doubtful whether, in fact, a spinner in a factory or a fireman on a railroad ever made an examination into the

condition of the machinery, the mode of conducting the business, or the character and habits of the operatives, for the purpose of ascertaining the extent of his risk, as an element in calculating the proper amount of his wages. A passenger in a railroad car may well be presumed to have a vivid consciousness of his risk, but it has never been understood that he contracts with reference to it when he buys his ticket, so as to be his own insurer. Again, a principal is responsible to an employee for his own negligence,—why should he not be liable for that of his agent over whom the employee has no control, and of whom he may have no knowledge ?

With respect to considerations of policy, it is by no means certain that the public interest would not be best subserved by holding the superior, with his higher intelligence, his surer means of information, and his power of selecting, directing, and discharging subordinates, to the strictest accountability for their misconduct in his service, whoever may be the sufferer from it.

But accepting the law as established, and as assented to by the parties, we are led to inquire whether the defendants have not had the benefit of it in the charge of the court. The defendants, outside of their regular business, had engaged in discharging coal from the holds of vessels. O'Neil, an employee in their ordinary business, was acting under a special contract with them to raise and drop the coal. He employed Burke. The defendants requested the court to charge that if Burke was employed in the same general business as O'Neil, and the company had the control of him (Burke), and could discharge him when they chose, he was to be considered as their servant, and they were not liable.

The charge was substantially as proposed. The court said, " If Burke was an employee of the railroad company the plaintiff cannot recover. I leave it to you upon all the evidence as a question of fact, to say whether Burke was so in the employ of O'Neil as an independent contractor, or in the employ of the company in their business. Had the company the control of him ? Could they discharge him without breaking their special contract with O'Neil. If they could,

or O'Neil was their agent in employing him, then he was in their employ, and the plaintiff cannot recover." It is difficult to see wherein the charge differed from that which was requested by the defendants, or wherein they could have been injured.

It was conceded by the counsel for the plaintiff, that if the relation of master and servant existed between the company and Burke, the action would not lie. The real question was one of fact, whether that relation existed; and even if on this motion we could inquire into the weight of the evidence, we should have no doubt of its sufficiency to sustain the verdict. In discharging the coal O'Neil was working under a particular agreement, in a business entirely distinct from his regular employment, and for a separate compensation. In this respect he was an independent contractor. He alone employed, paid, controlled, and could discharge, Burke. The pay of O'Neil did not depend upon the wages of Burke. O'Neil was paid by the ton ; Burke may have been hired by the day or the job. Burke was unknown to the company and his name did not appear on their rolls. He was considered and treated by all parties as in the employment of O'Neil, and not of the company. He was neither in law nor in fact the servant of the defendants.

In the case of *Kelly* v. *The Mayor &c. of New York*, 1 Kernan, 432, Judge Selden, a very eminent jurist, says, speaking of a contract, " The clause in question clearly gave the corporation no power to control the contractor in the choice of his servants. That he might make his own selection of workmen will not be denied. This right of selection lies at the foundation of the responsibility of a master or principal for the acts of his servant or agent. As a general rule no one can be held responsible as principal who has not the right to choose the agent from whose acts the injury flows." See also *Corbin* v. *The American Mills*, 27 Conn., 274. In 1st Redfield's Law of Railways, 506 (ed. of 1867), the general principle is laid down that one is liable for the act of his servant, but not for that of a contractor or the servant of a contractor. A long list of authorities is there collected bear-

ing upon the question involved in this case. See also American Leading Cases, with Hare and Wallace's notes, 648. It will be noticed that in most of the cases the question has not turned so much upon the legal principles as on their application to the facts of the particular case. This is especially true in the case of *Wiggett* v. *Fox*, 36 Eng. Law & Eq. R., 486, so much relied upon by the defendants.

A new trial is not advised.

In this opinion the other judges concurred.