KIELEY v. BELCHER SILVER MIN. CO.
See Cases Nos. 7,760 and 7,761.

## Case No. 7,760.

KIELLEY v. BELCHER SILVER MIN. CO.

[3 Sawy. 437; 1 2 Cent. Law J. 705.]

Circuit Court, D. Nevada. Sept. 20, 1875.

MASTER AND SERVANT—FELLOW-SERVANTS.

1. A servant takes upon himself the ordinary risks and perils of the service in which he voluntarily engages.

2. These ordinary risks include all such as, arising out of the nature of the work, happen notwithstanding the exercise of due care, and, also, those arising from the negligence of those of his fellow-servants, who are engaged in the same department of the master's general business, and who are not his superiors in authority.
[Cited in Lake Shore & Michigan S. R. Co. v. McCormick, 74 Ind. 446.]

3. The rule which exempts the master from liability for injuries caused by one fellow-servant to another, does not extend to the case of servants serving in distinct departments of the master's general business.
[Cited in Buckley v. Gould & Curry Silver Min. Co., 14 Fed. 838.]
[Cited in Bloyd v. St. Louis & S. F. Ry. Co. (Ark.) 22 S. W. 1090.]

This is a demurrer to the complaint in a suit to recover damages for personal injuries. The complaint states that the defendant [the Belcher Silver Mining Co.] is, and was, a corporation carrying on the business of mining in Storey county; that the plaintiff [James T. Kielley] was employed by the defendant as a laborer in its mine; that, at the same time, a large number of miners were also employed by the defendant, whose duty it was to excavate in the mine by means of blasts exploded at irregular intervals; that these blasts threw rock and earth in all directions with sufficient force to do great bodily injury to and kill a person struck thereby; that such blasts were put up in and exploded by the said miners; that all persons approaching a blast about to be exploded could have been notified easily thereof and warned of the danger, "and it was the duty of the defendant so to do; but not regarding its duty in this respect, it neglected to give plaintiff notice, but carelessly and negligently allowed him, whilst engaged in the employment and discharging his duty in the said mine, to approach so near a point where a

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

blast had been put in by the said miners, employees of defendant, that when the same was exploded by the said employees, this plaintiff was, by reason of the concussion and the rock and earth thrown therefrom striking him in the face and upon the body, greatly injured, his eyesight being permanently destroyed, and he receiving other serious injuries." The point raised by the demurrer is, that the plaintiff and the persons exploding the blast were fellow-servants, engaged in a common employment, though in different branches, and the defendant is not liable to plaintiff for any negligence of his fellow-servants, nor for any injury springing therefrom.

Lewis & Deal, for plaintiff.
Whitman & Wood, for defendant.

Before FIELD, Circuit Justice, and HILLYER, District Judge.

BY THE COURT (HILLYER, District Judge). That the defendant, as a corporation carrying on the business of mining, is liable for torts is well settled. Fowle v. Alexandria, 3 Pet. [28 U. S.] 490. And since, as such corporation, it can act by means of agents or servants only, it follows that it is liable to third persons for the tortious acts of its agents and servants. [In this respect it differs from a natural person who can act and commit torts personally.] [2] But the servants of a corporation are no more and no less than the servants of a natural person, and in both cases whatever is negligently done or omitted is, as to the public, the employer's act. [Railroad Co. v. Derby] 14 How. [55 U. S.] 468. It is also established law that a master is responsible to his servant for an injury caused by his (the master's) own negligent act. If, then, a corporation can, as master, be directly guilty of a tortious act to the injury of its servant, it is good pleading to charge the injury, as the plaintiff has done in this case, to be the result of the negligence of the corporation itself, and this consideration might dispose of the demurrer adversely to the defendant. But the argument for the defendant, as we understand it, goes further, and asserts that the defendant, being a corporation, and incapable of acting except through the agency of servants, the complaint shows upon its face, sufficiently, that the negligence was that of a fellow-servant, for which the plaintiff has no remedy; in accordance with what is stated to be the settled rule of law in this country and in England, namely: that a master is not liable to his servant for the negligence of a fellow-servant while engaged in the same common employment, unless he has been negligent in his selection of the servant in fault. Shear. & R. Neg. 101, § 86.

The doctrine of law which holds a master responsible for the acts of his servants is embodied in the maxims, qui facit per alium,

facit per se, and respondeat superior, the former being generally applied in matters of contract, the latter in matters of tort. The maxim respondeat superior proceeds upon the principle that the wrongful act of the servant, done in the course of his employment, is in contemplation of law, the act of the master himself. And the principle is founded upon public policy and convenience. The master chooses his servant, and directs and controls him in his work. It is the master who is doing the work, through the instrumentality of a servant. There is obvious justice in holding him responsible for injuries done by his servants while so engaged, otherwise, the master might carry on the most hazardous enterprises through the medium of careless and practically irresponsible servants, without liability for injuries caused by such servants to third persons, and, so, these latter be left virtually without redress. The master—the real cause of the injury in such cases—would so be allowed to take advantage of his own wrong, in violation of another established legal principle. The maxim, then, which permits the injured party to obtain redress from the real author of the wrongful act is founded in wisdom. This is the plain and undoubted rule of law, when the injury is received by a stranger. When, however, the injury is done by one fellow-servant to another, an exception to the general operation of the maxim, has been made. It is upon this exception that the defendant relies to defeat plaintiff's action.

This exception is firmly established in England, and in the United States the general, though not universal, current of authority is with the English courts. Whether the rule, as quoted above, embracing this exception, is law, to the extent claimed, is a question new in this court, and one which has never been directly passed upon by the supreme court of the United States. But the language of the latter court, in two recent cases, shows plainly that the rule is considered open for argument, consideration, and possible qualification. Packet Co. v. McCue, 17 Wall. [84 U. S.] 508; Railroad Co. v. Fort, Id. 553. In the case of Fort, the court, speaking on the general proposition embraced in the rule, said: Whether it be true or not, we do not propose to consider, because, if true, it has no application to this case. Yet the case was one in which a youth of sixteen, being employed in a machine-shop of the company, lost his arm while obeying a direction of Collet, under whose superintendence he was, to ascend a ladder and adjust a belt. Indeed, this case cannot be reconciled with the more extreme English and American cases, and must be considered as in some degree a modification of the rule relied upon by the defendant, which exempts the master, though the servants are employed in different branches of the common business or are of different grades, the servant injured being under the authority of the one causing the injury. The

---

[2] [From 2 Cent. Law J. 705.]

highest courts of Ohio, Kentucky and Wisconsin have either rejected this rule entirely, or modified it so as to exclude from its operation cases where the servants are in different departments of the common business, or the servant causing the injury is in authority over the injured servant. Cleveland, C. & C. R. Co. v. Keary, 3 Ohio St. 201; Pittsburg, Ft. W. & C. R. Co. v. Devinney, 17 Ohio St. 197; Louisville & N. R. Co. v. Collins, 2 Duv. 114; [5 Am. Law Reg. (N. S.) 265; Gillenwater v. Madison & I. R. Co., 5 Port. (Ind.) 339, 7 Port. (Ind.) 436;] [3] Chamberlain v. Milwaukee & M. R. Co., 11 Wis. 238. In Dixon v. Rankens, the court of session of Scotland wholly denied the rule, as entirely unreconcilable with legal reason. 1 Am. Ry. Cas. 569. In Pennsylvania, two of the five judges, and in South Carolina three of the ten judges dissent from the leading decision affirming this rule. Ryan v. Cumberland Val. R. Co., 11 Har. [23 Pa. St.] 384; Murray v. South Carolina R. Co., 1 McMul. 387.

In a case decided in 1867, the supreme court of Connecticut, while accepting the rule upon the authority of former adjudications, use this language in reference to the policy upon which it is said to be founded: "With respect to considerations of policy, it is by no means certain that the public interest would not be subserved by holding the superior, with his higher intelligence, his surer means of information, and his power of selecting, directing, and discharging subordinates, to the strictest accountability for their misconduct in his service, whoever may be the sufferer by it. A principal is responsible to an employee for his own negligence; why should he not be liable for that of his agent, over whom the employee has no control and of whom he may have no knowledge." Burke v. Norwich & W. R. Co., 34 Conn. 474. See, also, Waller v. South Eastern R. Co., 2 Hurl. & C. 111, in note.

In the present state of judicial decision inquiry may, without presumption, be made whether and how far the rule is or is not true; especially when we remember that it is of recent origin—is, in fact, an exception ingrafted upon an ancient maxim of the common law, from considerations of public policy and convenience, as the rule best calculated to protect the rights and secure the safety of all between whom the social relation of master and servant exists.

On looking into the decisions which support the rule, we find they proceed upon the theory that there is an implied condition in every contract of service that the employee takes upon himself all the ordinary risks of the service, including the negligence of his fellow servants, and that in consideration of assuming such risks the servant receives increased compensation.

The justice and policy of this are maintained by these arguments: That these are

perils which the servant is as likely to know, and against which he can as effectually guard, as the master; that they are perils which can be as distinctly foreseen and provided for in the rate of compensation as any others; that where several persons are employed in one common enterprise, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the other, can give notice of any misconduct, incapacity or neglect of duty, and leave the service if the common employer will not take such precautions and employ such agents as the safety of the whole party may require; that if we are to teach each agent that for the negligence of others resulting in an injury to himself he can grasp the treasures of his principal, he ceases his vigilance over those with whom he works—a bribe is held out to him to incur personal risks which he may have facilities to render partially harmless to him, but which may carry destruction to others; and, finally, that the safety of all will be better secured by enforcing the rule than by giving the servant his action against his master. Farwell v. Boston & W. R. Corp., 4 Metc. (Mass.) 49; dissenting opinion of Spaulding, Judge, in Little Miami R. Co. v. Stevens, 20 Ohio 415. This reasoning will not support the rule, unless the general terms "fellow-servants" and "common employment" are taken in a restricted sense. The rule requires us to imply certain terms not expressed by the parties to be part of the contract of service, and the question is, how far considerations of public policy and convenience authorize courts to go in that direction.

That every servant takes upon himself the ordinary risks and perils of the service he undertakes, must be admitted as a rule founded in justice and sound policy. That these ordinary risks include all such as are liable to happen in the performance of the work he engages to do, although he and his fellow-servants discharge their duty and exercise due care is also clear.

Nor will it be denied that, if the servant has contracted to serve in any specified branch or department of his master's general business, he assumes the risks arising from the negligence of those of his fellow-servants, not his superiors in authority, who are engaged in the same department, whose conduct he has an opportunity of observing, and, against the consequences of whose negligence he can thus, to some extent, protect himself by the exercise of his own care and prudence. But it seems apparent that any rule which goes further, and throws upon the servant any risks other than those which are the natural and ordinary incidents of the work he agrees to do, and which he might fairly anticipate as liable to accompany his undertaking, is unjust and indefensible. Such a rule, we think, is the one

---

[3] [From 2 Cent. Law J. 705.]

in question, when so construed as to include in the term "fellow-servants engaged in a common employment" all who are employed by the same master, though laboring in distinct and separate departments of his business. Carried to this extent, the rule relieves the master of a responsibility which justice and policy alike require he should bear. Among the duties and obligations arising out of the relation of master and servant, the law regards that of the master to provide for the safety of the men in his employment as the first and highest. It is peculiarly so where, like that of mining, the business is hazardous. This obligation includes the exercise of due care in the selection of all who are to act for him, and requires him at least to see to it that those who labor in one department of his business are not injured by his chosen servants in another. Unless this is so, there is no adequate protection to the laborer against his employer's negligence; for the workmen in one department, having no authority over those in another, nor any opportunity of observing or influencing their conduct, or of guarding themselves by their own care and prudence, are defenseless save through the watchful care of the master, which can be secured only by throwing upon him the responsibility of seeing that each department of his business is conducted with due care. It is assuming the whole question—as to the reason, justice and policy of exempting the master from liability in such cases—to say that such exemption is implied from the contract of service; for unless the exemption is demanded by reason and sound policy, it ought not to be implied.

The defendant is a corporation engaged in mining. From the trustees down to the lowest grade of its employees, all are engaged in one common object: namely, obtaining gold and silver from the mine. In a general sense, they are all fellow-servants engaged in a common service. Yet, no court, it is believed, has gone so far as to say that all these are fellow-servants within the rule contended for here by the defendant. If the defendant negligently provides insufficient machinery, the negligence is necessarily that of some one of its servants; yet, all the courts agree that it may be liable to one of its servants for such negligence. So, if there is neglect in selecting a servant, it must be the neglect of some servant of the corporation; yet, there is no doubt that the corporation is liable, if, from such neglect, injury results to a fellow-servant. In these cases, the servant injured, and the one guilty of negligence, are not regarded as fellow-servants within the rule. Hence, it cannot be truly said that the servant, by his contract of service, impliedly takes upon himself the risk of injury from the negligence of all who, in a general sense, are his fellow-servants. As between some who, in common speech, are properly enough called fellow-servants, the master's liability attaches; as between others, it does not. [The term itself, as used in this connection, is badly chosen, and well calculated to mislead. For in the light of the decisions it does not mean all who are employed by the same master to carry out a common business, but only such as serve together in such connection, and in such capacity, that the law exempts the master from liabilities for injuries one to another caused by negligence.] 4 Who are to be considered fellow-servants, engaged in a common business, within the rule is, in some degree, an open question in each case, to be determined by the facts of the particular case. But there should be some established principle to guide us in determining that question, and it ought to rest on sound reasoning. The principle which lies at the foundation of the master's exemption in any case, is this: That the servant, having voluntarily entered into a contract of service to do a specified work for a specified compensation, has thereby accepted the ordinary perils incident to doing that work; and whenever the negligence of another employee of the same master can be considered an ordinary risk, one which he might reasonably anticipate at the time of making his contract, he accepts also the perils liable to happen through such negligence. And it seems clear that upon this principle, those only are fellow-servants for whose negligence, one to another, the master is exempt, who serve in such capacity and in such relation to the master and each other, that the means of the servants to protect themselves are equal to, or greater, than those of the master to afford them protection; and that further than this justice and policy forbid us to carry the implied portion of the contract of service. Beyond this an injured servant has as clear title to relief against the master as a stranger, upon the maxim respondeat superior. Such cases as that of Union Pac. R. Co. v. Fort, 17 Wall. [84 U. S.] 553, and Ford v. Fitchburg R. Co., 110 Mass. 240, with many others, show that the contract of service is not presumed to regulate all the rights and duties of the parties. Under various circumstances, the master has been held liable to one servant for the negligence of another, notwithstanding the privity of contract. In such cases the master's liability attaches, not by virtue of his contract, but upon the maxim respondeat superior, which maxim our supreme court has said is of "universal application," and "wholly irrespective of any contract, express or implied, or any other relation between the injured party and the master." Railroad Co. v. Derby, 14 How. [55 U. S.] 468.

Regarding the case at bar in the light of the conclusions thus reached, the complaint states a good cause of action, and it is not

---

4 [From 2 Cent. Law J. 705.]

enough to defeat it that the negligence charged must have been that of some servant of the defendant employed in the same general business with the plaintiff. To defeat the action it must appear that the plaintiff and the person whose negligence caused the injury were fellow-servants within the principles announced in this opinion. The demurrer is overruled.

[NOTE. This case was subsequently tried before a jury. At the close of the plaintiff's testimony, the defendant moved the court to advise the jury to find a verdict for defendant, upon the ground that the evidence taken as true, and most strongly in favor of the plaintiff, would not justify a verdict for the plaintiff. The court so advised the jury, who accordingly brought in a verdict for the defendant. Case No. 7,761.]