Hon. TIMOTHY P. REDFIELD,
Hon. JONATHAN ROSS, .
Hon. H. HENRY POWERS,
Hon. WHEELOCK G. VEAZEY, } Assistant Judges.
Hon. RUSSELL S. TAFT,
Hon. JOHN W. ROWELL,

---

## M. R. DAVIS, Adm. v. CENTRAL VERMONT R. R. CO.

*Master and Servant. Fellow Servants. `Negligence.*

1. A railroad company is liable in an action on behalf of its fireman killed by the washing out of a culvert, the culvert being in an improper condition resulting from the negligence and carelessness of its bridge-bui'der and road-master.
2. The negligence of the bridge-builder and road-master in caring for the culvert in law was the negligence of the defendant ; and notice to the former of a defective construction was notice to the latter ; hence, it is not a question of whether the servant whose negligence caused the injury and the servant injured were fellow-servants ; nor, whether the former was ordinarily skillful ; nor, whether the defendant was negligent in employing them.
3. The freshet which washed out the embankment was not so extraordinary as to excuse the defendant from liability.

ACTION on the case for negligence.  Plea, general issue.  Trial by jury, September Term, 1881, Rutland County, VEAZEY, J., presiding.  Verdict for the plaintiff to recover $5000.  As to the freshet which washed out the culvert, causing the accident, the court charged:

" The company did not warrant to Davis that the culvert or road-bed should be safe.  It was not bound to know of defects and to keep the culvert safe at all events.    But it was bound to use reasonable care to discover any defects in it and to put and keep it in a safe condition.

" To answer this degree of care the company was not bound to provide and maintain culverts that would withstand unprecedented floods or freshets not to be naturally anticipated.  If this freshet was so extraordinary as to be beyound the reasonable anticipation of prudent men having the knowledge of this brook and locality as to liability to floods, as the case shows the men had who built and had charge of this culvert, then there is no liability on the part of the defendant on account of the disastrous effect of this freshet.

" The defendant claims that there was no defect in fact ;  that reasonable care would not compel them to provide against such an extraordinary, sudden and violent freshet as this was ;  that the culvert was ample in size and proper in construction for any such flow of water as ordinary care would anticipate ;  that this freshet was so extraordinary and unprecedented as to be what is sometimes termed an act of God, against which human foresight could not and is not called upon to provide ;  that the stockade of posts or piles was designed to protect the culvert and road, and would so operate in all cases which the company was bound to expect might happen, and would not in such cases stop the flow of water.  If you find this as claimed the plaintiff is not entitled to recover.

" You will of course have in mind the general tenor of the testimony as to the general character and nature of this freshet.  There has not been any particular dispute about this.  It seems that the storm begun a day or two before, and that it was a snow storm, and that some inches of snow fell and then changed to rain and increased in violence the day of this accident ;  that the ground was frozen and after the rain had saturated or been taken up by this snow it suddenly gave way and filled this small brook, and the extent of this flood has been alluded to by the witnesses—that is, its effects upon that vicinity.    These things you will have in mind in determining whether this was such a flood as the defendant was reasonably bound to anticipate in providing a culvert at this

time.    You will also bear in mind the other facts as to the nature of this culvert ; the liability to sudden rise of water in the stream-let there, and the formation of the surface, the hilly character of the region, as bearing upon the question whether this was a freshet the defendant was bound to anticipate."

The other facts are stated in the opinion of the court.

*F. E. Woodbridge, G. C. Noble* and *J. C. Barrett,* for defendant.

The jury have found that the accident was occasioned by the *negligence* of the section boss, the road master and bridge builder. And the case shows that these men were the *servants,* the employes of the company.    The defendant, therefore, is not liable for the injury to plaintiff's intestate, who was a co-employe.

This entitles the defendant to a judgment.    *Hard* v. *Vt. & Can. R. R.,* 32 Vt. 473 ;    *Priestly* v. *Fowler,* 3 M. & W. 1 ;    *Gallager* v. *Piper,* 33 L. J. C. P. 335 ;    *Feltham* v. *England,* Law Rep. 2 Q. B. 33 ;    *Mobile & Montgomery R. R. Co.* v. *Smith,* 59 Ala. 255 ; (An exhaustive case.)    *McDonold* v. *Hazeltine,* 53 Cal. 35 ; *Faulkner* v. *Erie R'y Co.,* 49 Barb. 324 ;    *Wonder* v. *Baltimore & Ohio R. R. Co.,* 32 Md. 412 ;    *Ford* v. *Fitchburgh R. R. Co.,* 110 Mass. 240 ;    *Holden* v. *Fitchburgh R. R. Co.,* 129 Mass. 268 ; *Lawler* v. *Androscoggin R. R. Co.,* 63 Me. 462 ,    *Collier* v. *Steinhart,* 51 Cal. 116 ;    *Albro* v. *Agawam Canal Co.,* 6 Cush. 75 ; *Smith* v. *The Mayor,* 66 N. Y. 295.    If the company is in no *fault* as to the competency of servants, whether they in point of fact turn out to be competent or not, it is not liable for an injury to a servant that happens through negligence of a fellow servant.    See authorities above cited.

Notice of defects to the other servants was not notice to the defendant.    Pierce Railroads, 384 ;    *Mc William* v. *Saratoga & Wash. R. R. Co.,* 20 Barb. 449 ;    *Blake* v. *R. R. Co.,* 70 Me. 60.

*Prout & Walker,* for plaintiff.

The company is under an obligation to its servants to use reasonable care to provide and maintain a safe road-bed, and suitable machinery, engines, cars, and other appointments of the railroad, and is liable to them for injuries resulting from defects which it

knew or ought to have known, and could have prevented by the exercise of such care ; and it is under the same duty and obligation to maintain these instrumentalities in proper condition. Pierce Railroads, 370–1.; *Noyes* v. *Smith*, 28 Vt. 59 ; *Hard* v. *Vt. & Can. R. R.* 32 Vt. 473 ; Camp. Negl. s. 73 ; *Britton* v. *Great W. Cotton Co.* L. R. 7 Ex. 130 ; 35 L. T. (N. S.) 477.

Acts which the master as such is bound to perform for the safety and protection of his employes cannot be delegated so as to exonerate the former from liability to a servant. *Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206 ; *Fuller* v. *Jewett*, 80 N. Y. 46 ; *Kain* v. *Smith*, Ib. 458 ; *Hawley* v. *Nor. Cen. R. R.*, 82 N. Y. 370 ; *Painton* v. *Ib.*, 83 N. Y. 7 ; *Lansing* v. *N. Y. R. R. Co.*, 49 N. Y. 521 ; *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549 ; *Ford* v. *Fitchburg R. R.*, 110 Mass. 240 ; *Snow* v. *Housatonic R. R.*, 8 Allen, 441 ; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282 ; *Gilman* v. *Eastern R. R. Co.*, 13 Allen, 433 ; *Holden* v. *Fitchburgh R. R.*, 129 Mass. 268 ; *Ackerson* v. *Dennison*, 117 Mass. 407. *Hardy* v. *North Carolina Cen. R. R.*, 74 N. C. 734, 76 N. C. 5, holds that it is the duty of the corporation to inspect the whole road immediately after freshets and storms. *Cowles* v. *Richmond R. R.*, 12 C. L. J. 546 (N. C.) ; *Shanny* v. *Androscoggin Mills*, 66 Me. 420 ; *O'Donnell* v. *Allegheny Valley R. R. Co.*, 59 Pa. St. 239.

The opinion of the court was delivered by

Ross, J. The plaintiff's intestate, a locomotive fireman in the employment of the defendant was killed Dec. 10, 1878, while discharging his duties in such employment. This action is brought to recover damages sustained by the widow and next of kin from the death of the intestate. The declaration charges that, on the above named day, the defendant was operating the Rutland Railroad as lessee ; that the intestate was in its service as locomotive fireman on its passenger trains passing over the railroad ; that thereupon it became and was the duty of the defendant to keep and maintain a sufficient and safe road-bed and track, and to use due and proper skill and care in furnishing and maintaining a suitable and sufficient roadway for the passage of its passenger

trains; and that the defendant so negligently and carelessly performed its duty in this respect that the road-bed become washed away and the intestate thereby killed. This is the substance of the several counts in the declaration. The evidence showed that the accident occurred near Bartonsville on the Rutland railroad, and was caused by the washing out of a culvert. The plaintiff claimed and gave evidence from which the jury have found that the culvert was in an improper condition, resulting from the negligence and carelessness of the road-master, bridge-builder, and section boss. The culvert had been washed out two or three times before. The last time before that occasioning the accident was by the freshet of 1869. It was then rebuilt by the bridge-builder of the Rutland Railroad Company, or of the trustees who were operating it, and the embankment over it was constructed by the road-master of the same. The plaintiff claimed and gave evidence tending to show that, in constructing the culvert the bridge-builder carelessly and negligently obstructed it by constructing an improper stockade of piles on the up-stream side to prevent the drift wood and brush from being carried into the culvert by the brook that flowed through it, and that the road-master carelessly and negligently constructed the embankment above the culvert,— which was washed away on the occasion when the intestate received his injuries,—of loose and improper material. She also claimed and gave evidence tending to show that this defendant through its bridge-builder, and road-master, had carelessly and negligently allowed these defects to remain during all the years it had been operating the road, and also that its section boss had negligently and carelessly allowed the stockade to become partially filled and clogged so that it further obstructed the passage of water. The testimony further tended to show that the washout of the embankment above the culvert was occasioned by the stockade, holding back the water so that it rose and ran over the embankment and washed out the loose and improper materials of which it was constructed. It was not claimed by the plaintiff but that the defendant's bridge-builder, road-master and section-boss were ordinarily skillful and careful men in their several employments, nor that the defendant was guilty of any negligence in

selecting and employing them. The plaintiff's evidence further tended to show that the defendant entrusted the construction and maintenance of all the bridges and culverts on that division to its bridge-builder; and that the construction and maintenance of the track and road-bed of that division was entrusted to its road-master, who had under him section-bosses, each of whom had a gang of section men and had under the road-master the care of about five miles of the track and road-bed. The plaintiff in the trial court contended that the negligence of its bridge-builder and road-master in caring for the culvert, and in failing to keep the same in proper repair both in regard to the improper construction and continuance of the stockade and the embankment above it, was in law the negligence of the defendant, and the County Court in substance so held and instructed the jury. The correctness of this holding and instruction is the principal question involved in the the decision of this case. The other contentions of the defendant that the declaration should have alleged that it had notice of the defects in the culvert and embankment, and that evidence of notice to its bridge-builder and road-master of these defects was improperly admitted, depend upon whether the bridge-builder and road-master so far stood in the place of the defendant in regard to its duty and negligence to the intestate, that their knowledge of the defects and their negligence in regard thereto were in law the knowledge and negligence of the defendant. The defendant contends that the bridge-builder, road-master and section-boss were fellow-servants of the intestate in running its trains and operating the road, and that their negligence and want of care are not, in law, imputable to it, that it is not liable for the consequences thereof to the intestate or his representatives; and that the consequences of such negligence were one of the risks which the intestate assumed when he entered upon the employment. It relies upon the decision of *Hard* v. *The Vermont & Canada R. R. Co.*, 32 Vt. 473. In the light of that decision it must be confessed that they were fellow-servants with the intestate in the general work of operating the road. Since that decision was promulgated the general subject of how far, and when, a master is liable to an employe for injuries resulting from the negligence of a co-employe

has been often before the courts of last resort in this country and in England, and has been much considered and discussed. The conclusions reached have not been uniformly the same. The general principles underlying the determination of the duties and liabilities of the master, and of the risks which the servant assumes by entering upon the employment are very generally agreed upon. Where the employment is hazardous it is very generally agreed that the master assumes the duty of exercising reasonable care and prudence, to provide the servant a reasonably safe place, and reasonably safe machinery and tools to exercise the employment, and to maintain the place, machinery and tools in a reasonably safe condition during the time of such employment. He also assumes the duty of exercising the same measure of care and prudence to provide suitable materials, suitable and sufficient co-servants to properly exercise the employment or carry on the business. Where this duty is discharged by the master, the servant assumes all risks and hazards attendant upon the exercise of the employment or performance of the work, including those resulting from the negligence and carelessness of co-servants. The diversity in the decisions has arisen in determining who are co-servants in the common employment, and whether the master is to be charged with the negligence of an employe who in some parts of the employment is strictly a co-servant with the person injured, and in other parts is discharging a duty incumbent upon the master. Some courts have held that the master is responsible for the negligence of a servant who had the right to command and did command an under servant, who was injured in the performance of such command or order negligently given. This distinction, however, is not now generally recognized, nor would it seem to be a proper application of the general principles which all agree apply to the relation of master and servant in regard to injuries sustained by the latter in performing the service. The principal diversity in the later decisions arises in determining the extent of the liability of the master for the negligence of his servant which causes injury to another servant, while performing a duty which by the relation of master and servant rests upon the master. The English courts generally hold, that, when the master has provided

a reasonably safe place, machinery and materials in and with which the work is to be performed, but undertakes to keep the place and machinery in suitable repair through agents and servants, he has fully performed his duty when he has exercised reasonable care and prudence in selecting skillful and careful servants to detect defects and make repairs, and has supplied such servants with suitable help and materials with which to make such repairs ; and that the master is not liable to another servant for any negligence of the first servant in detecting and making such repairs. *Wilson* v. *Merry et. al.*, 1 L. R. S. & D. Ap. C. 326. In this case the Lord Chancellor states the doctrine as follows : " I do not think the liability or non-liability of the master to his workman can depend upon the question whether the author of the accident is not, or is, in any technical sense, the fellow-workman or *collaborateur*, of the sufferer. In the majority of cases in which accidents have occurred, the negligence has, no doubt, been the negligence of a fellow-workman ; but the care of the fellow-workman appears to me to be an example of the rule, and not the rule itself. The rule, as I think, must stand upon higher and broader ground. . . . The master is not, and cannot be, liable to his servant unless there be negligence on the part of the master in that in which he, the master, has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business. The result of an obligation on the master personally to execute the work connected with his business, in place of being beneficial, might be disastrous to his servant, for the master might be incompetent personally to perform the work. At all events, a servant may choose for himself between serving a master who does and a master who does not attend in person to his business. But what the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this he has, in my opinion, done all that he is bound to do. And if the persons so selected are guilty of negligence, this is not the negligence of the master, and if an accident occurs to a

workman to-day in consequence of the negligence of another workman, skillful and competent, who was formerly, but is no longer in the employment of the master, the master is, in my opinion, not liable, although the two workmen cannot technically be described as fellow-workmen." This view places the liability of the master upon the duty he owes the workman arising from their relations to each other. It implies that if the master personally attempts to discharge that part of the work which the relation devolves upon him, and his negligence therein causes injury to the workman, the master is liable therefor. The question is naturally suggested why should he not also be liable for the negligence of the agent or servant, whom he has appointed to discharge the same duty in his stead although he has exercised due care to select a person competent and skillful? Is such an agent or servant, while performing the duty *cast* by the relation upon the master, a fellow-workman with the master's servant in the employment, in such a sense that the latter cannot and ought not to recover of the master for injuries sustained through the negligence of the former ? If so, the master who performs his part of the duty, as this defendant and all corporations must, by agents and servants, secures an immunity from liability which the master who personally enters the service to manage and direct the performance of the work does not enjoy.

The doctrine now established by the United States Supreme Court, and by most of the courts of last resort in the several States, holds the master liable to his workman for injuries sustained from the negligent performance of duties which rest, by the relation upon the master, whether the master perform such duties personally or through an agent or servant. Says Mr. Wharton in his work on Agency, s. 232: " It is important . . to remember that the master is liable, *where the negligence of the offending servant was as to a duty assumed by the master as to working place and machinery.* A master, as we have already seen, is bound when employing a servant to provide for the servant a safe working place and machinery. It may be that the persons by whom buildings and machinery are constructed are servants of the common master, but this does not relieve him from his obligation to make

buildings and machinery adequate for working use. Were it otherwise, the duty before us, one of the most important of those owed by capital to labor, could be evaded by the capitalist employing his own servants in the constructions of his buildings and machinery. In point of fact this is the case with most great industrial agencies; but in no case has this been held to relieve the master from the duty of furnishing to his employe material, machinery and structures, adequately safe for their work. He does not guarantee that either building, machinery or organization should be perfect; but he is bound by the rule, *Sic utere tuo, ut alienum non laedas*, to use such diligence and care in this relation as is usual with good business men in his line. It is not enough for him to employ competent workmen to construct his apparatus. If an expert, he must inspect their work, and if not, he must employ another competent person as expert for the purpose. If such, however, is his duty, he must not only see that the structure he provides is suitable at the outset, but that it is kept in repair, and the repairer's negligence in this respect is the master's negligence."

Says Mr. Pierce in his work on Railroads, p. 370 : " The company, like any master, is under an obligation to its servants to use reasonable care to provide and maintain a safe road-bed and suitable machinery, engines, cars, and other appointments of the railroad, and is liable to them for injuries resulting from defects which it knew, or ought to have known, and could have prevented by the exercise of such care ; and it is under the same duty and liability to maintain these instrumentalities in proper condition. The servant assumes the natural risks of his employment, but not those which the wrongful act of the employer has added."

The same doctrine was held by the United States Supreme Court in *Hough* v. *Railway Co.*, 100 U. S. 213, in which Mr. Justice HARLAN reviews the authorities. In a note the reporter has cited a long list of cases sustaining the doctrine. *Holden* v. *Fitchburg R. R. Co.*, 129 Mass. 268, also found in 2 Am. & Eng. R. R. Cases, 94, is a recent case on this subject, in which the then Ch. J. GRAY of Massachusetts, ably reviews the cases, and states the same doctrine. The editor of the latter report has in a note to this case collected a large number of American cases

in which the same doctrine has been announced. When the case of *Hard* v. *The Vt. & Canada R. R. Co.*, *supra*, was decided, the liability of the master was held to be dependent upon whether the servant whose negligence caused the injury and the servant injured were fellow-servants in a common employment or work. Making this the test for determining the master's liability, and the reasoning and conclusions of the late Chief Justice PIERPOINT are unanswerable. But this test, while determinative in a great number of cases, as we have seen, has been abandoned both in England and in this country, and in lieu thereof the master's liability has been made to rest upon whether the negligence arose in the performance of a duty for the careful discharge of which he became responsible when he assumed the relation of master to the injured servant. On the principles which we think furnish the true ground upon which the master's liability rests, and on the American application of them, the charge of the County Court in the particulars to which exceptions were taken contains no error. The American doctrine holding the master liable for the negligence of his servant while discharging a duty which the master owes to a general workman is more consonant with reason and the general safety of the travelling public than the English doctrine announced in *Wilson* v. *Merry*, *supra*. The bridge-builder and road-master while inspecting and caring for the defectively constructed culvert, were performing a duty which as between the intestate and defendant it was the duty of the defendant to perform. Their negligence therein was the negligence of the defendant. Being the agents of the defendant for the performance of these duties, notice to them in regard to the defective construction of the stockade as affecting the safety of the culvert, was notice thereof to the defendant. Hence, the evidence to show such notice to them was properly admitted. The declaration charged that the defendant was negligent in regard to the construction and repair of the culvert. This bound the plaintiff to prove such negligence. As against the motion in arrest in judgment, this was sufficient. It could not be negligent in these particulars unless it knew through those on whom it had cast the duty of inspecting and repairing the culvert, or ought to have known of the defects com-

plained of. The charge of culpable negligence impliedly charged the defendant with knowledge of the defects.

Nor do we think that the evidence showed that the freshet which washed out the embankment was so extraordinary as to excuse the defendant from liability. It showed that the culvert was sufficient in capacity and construction, if it had not been for the improper construction of the stockade to have discharged all the water that flowed in the brook on that occasion. Under the evidence it was clearly the duty of the court to submit that question as it did to the determination of the jury. Hence, the defendant's request asking the court to hold that the defendant was not liable on this account was properly refused.

The judgment of the County Court is affirmed.