PIKE *v.* CHICAGO & A. R. Co.

*(Circuit Court, E. D. Missouri, E. D. January 15, 1890.)*

**1. MASTER AND SERVANT—FELLOW-SERVANTS—RAILROAD EMPLOYES.**
A bridge watchman on a railroad and the engineer and conductor of a train on the road, being engaged in different departments of the company's service, and working under the immediate direction of different foremen, are not fellow-servants, so as to exempt the company from liability to the former for the trainmen's negligence.

**2. NEW TRIAL—WEIGHT OF EVIDENCE.**
In an action by a watchman of a railroad bridge for injuries received by a passing train, the only theory on which a verdict could be sustained was that plaintiff was caught on the trestle. The only evidence in support of this theory was the testimony of three witnesses who visited the scene of the accident 8 or 10 hours after it happened, and who stated that they found a spot of blood at the foot of the east abutment, from 30 to 50 feet in a direct line from the top of the trestle. The plaintiff was rendered unconscious for several weeks by his wound, which was on the head, and after he regained consciousness had no recollection of the details. The testimony of the trainmen and two passengers tended to show that he was struck

at the end of the bridge, probably while sitting near the track. There were no wounds, except the one on his head, which could have been made by the locomotive bumpers. *Held*, that a verdict for plaintiff would be set aside.

At Law. On motion for new trial.

*D. P. Dyer*, for plaintiff.

*R. H. Kern*, for defendant.

THAYER, J. The motion for a new trial in this case assigns various reasons why the verdict should be set aside and a retrial ordered. Among other reasons urged in support of the same, it is contended that plaintiff stood in the relation of a fellow-servant to the engineer and other trainmen in charge of defendant's train by whose alleged negligence the injury is said to have been occasioned. As this point, if well conceived, goes to the foundation of plaintiff's right of action, it will be first considered. The testimony in the case tended to show that plaintiff was stationed as a watchman at a bridge or trestle on the line of defendant's railroad; that the bridge in question, as well as the track for a distance of 1,200 feet to the east, and for a distance of 700 feet to the west, thereof, was being raised and repaired at the time of the accident, to overcome a considerable down grade as the track approached either end of the trestle; that warning or "slow lights" as they are termed, had been set at a distance of 20 telegraph poles from each end of the bridge; that it was plaintiff's duty, as watchman, to see that the slow lights were kept burning during the night, and also to inspect the track and trestle that was undergoing repair, and see that both were in a safe condition for the passage of trains; that the proper discharge of such duties required the plaintiff to pass at intervals over the track and trestle, and to go to a sufficient distance in both directions from the trestle to bring the slow lights into view. The testimony showed that the plaintiff was either employed by and worked under the orders of the regular section boss, or the foreman of the construction gang that was making the repairs in question. The petition charged, in substance, that plaintiff "was caught, struck, and thrown from the bridge" in question, by one of defendant's passenger trains on the night of June 28, 1888, and that the injury complained of was due to the negligence of the engineer and conductor of the train, in failing to give the customary warning signals as the train approached the bridge, and in running the train at a dangerous rate of speed.

If the question now under consideration was to be determined solely with reference to the rule of liability which has the sanction of the court of last resort in this state, there is no doubt that the court would be compelled to hold that the plaintiff and the trainmen—that is, the engineer and conductor of the passenger train—were not fellow-servants in such sense as to exempt the defendant from liability to the plaintiff for the trainmen's negligence. In the case of *Sullivan* v. *Railway Co.*, 97 Mo. 114, 10 S. W. Rep. 852, a section boss was run over and killed in consequence of the negligence of an engineer in charge of a train. The negligence of the engineer appears to have consisted in the fact that he failed to keep a proper lookout, and failed to give a proper warning of

the approach of the train. It was held that the company was liable for the negligent act in question, as the engineer and section boss did not at the time occupy the relation of fellow-servants. The decision in the *Sullivan Case* was referred to and criticised in some respects in a later case decided by the same court, to-wit, *Murray* v. *Railway Co.*, 12 S. W. Rep. 252, (not yet officially reported.) Though criticised in some respects, I understand the court to adhere to the general doctrine underlying the decision, that, when working independently of each other in their respective departments of the general service, and under the immediate control of different officers or foremen, trainmen and trackmen are not to be regarded as fellow-servants, within the meaning of the rule exempting the company from liability.

A similar doctrine prevails in the state of Illinois. A foreman of a party of track repairers or sectionmen, while engaged in the discharge of his duties, was killed by a large lump of coal carelessly dropped by a fireman from the tender of a passing train. It was held, in an elaborate opinion, that the defendant company was liable to the personal representatives of the deceased for the negligent act in question. *Railroad Co.* v. *Moranda*, 93 Ill. 303. The decision in this case expressly holds that persons employed in different departments of the same general service, and under the immediate supervision of different officers or foremen, and who do not co-operate with each other in such manner as to bring them together, so that they can exercise a cautionary influence over each other, are not fellow-servants. In the case of *Garrahy* v. *Railroad Co.*, 25 Fed. Rep. 258, Mr. Justice MILLER held, in this circuit, that a laborer employed in the business of track-laying, under the orders of a section foreman or boss, was not a fellow-servant with persons engaged in running and managing a switch-engine, that was not being used in connection with the business of track-laying, in which the laborer was engaged. In the case of *Howard* v. *Canal Co.*, 40 Fed. Rep. 195, the United States circuit court for the district of Vermont held that trackmen, when engaged in their own department of the general service, are not fellow-servants with trainmen engaged in their department, in such sense as to exempt the master from liability to the former, for injuries sustained by reason of the negligence of the latter. To the same effect is the decision in *Railroad Co.* v. *O'Brien*, 21 Pac. Rep. 32.

So far as I am advised, the precise question now under consideration has never been decided by the supreme court of the United States. The case of *Randall* v. *Railroad Co.*, 109 U. S. 482, 3 Sup. Ct. Rep. 322, cited by defendant's counsel, merely holds that trainmen employed on one train in a railroad yard, are fellow-servants with trainmen on another train of the same company that is being operated in the same yard. The case of *Railroad Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, which has sometimes been cited in support of the proposition that persons employed in different departments of a given service are not fellow-servants, although the general object to be accomplished by the service is the same, and the employer the same, in reality only decides that the conductor of a train, who has authority to control its movements, stands in

the relation of a vice-principal to other employes on the same train. The case appears to have no immediate bearing on the question how far the fact that persons are employed in different departments of the same service, and under different foremen, will destroy the relation of fellow-servant that operates to relieve the master from liability for their negligence.

In some of the cases above cited, particularly in *Railroad Co.* v. *Moranda* and in *Murray* v. *Railway Co.*, it is conceded that the majority of the cases in this country and in England hold, and such is no doubt the fact, that persons are in the same common employment, and hence are fellow-servants, within the meaning of the rule exempting the master from liability to a servant for the negligence of a fellow-servant, when they are engaged in the same general business, aiming at one general result, and the employer is the same, although they work in different departments of the general service. Shear. & R. Neg. (4th Ed.) §§ 235, 239, and cases cited. There is a numerous class of cases to be found in the books where the master has been held liable to an employe for the negligence of a fellow-servant, on the ground that, in the particular matter complained of, the servant in default was the immediate representative of the master in the performance of some duty which the master owed to the injured employe, as where servants deputed by the master to supply and keep in repair suitable tools, machinery, and appliances wherewith other employes are to work, are negligent in the performance of such duties. *Railroad Co.* v. *Herbert*, 116 U. S. 646, 6 Sup. Ct. Rep. 590, and cases cited; *Hough* v. *Railroad Co.*, 100 U. S. 213; *Davis* v. *Railroad Co.*, 55 Vt. 84; *Holden* v. *Railroad Co.*, 129 Mass. 268; *Lewis* v. *Railroad Co.*, 59 Mo. 495; *Hall* v. *Railroad Co.*, 74 Mo. 301.

The decisions in this class of cases are grounded on the principle, now well settled in this country, that an employer cannot escape liability, even to an employe, for the non-performance, or negligent performance, of a duty that he owes to an employe, merely by intrusting its performance to some other servant or agent. Notwithstanding the fact that those cases really have no bearing on the question who are fellow-servants, within the meaning of the rule exempting employers from liability to servants for the negligence of fellow-servants, yet it is probable, from the manner in which this class of cases is sometimes cited, that they have occasioned some confusion, and it is even possible that in a few instances they have induced some courts, in opposition to the general current of authority, to hold a master liable to a servant for the negligent act of a fellow-servant, merely because they were employed in different departments of the same general service, even where the negligence complained of did not consist in the neglect of some duty which the law specially devolves on the master. But, be this as it may, the decision in this circuit in the case of *Garrahy* v. *Railroad Co.*, *supra*, supplemented as it is by the decision in *Sullivan* v. *Railway Co.*, *supra*, compels me to hold in the case at bar, that the plaintiff and the trainmen, to whose negligent act the injury complained of is imputed, were not fellow-servants. They were engaged in different departments

of the defendant's service, and worked under the immediate direction of different foremen. In the discharge of their several duties, they did not co-operate in such manner as to exercise an influence over each other's acts to any greater extent than trainmen and trackmen usually co-operate, and, according to the authorities last cited, cannot be regarded as fellow-servants. It results from this view that there was no error committed in refusing defendant's fifth request.

It is also insisted that the verdict is against the weight of evidence, under the law as declared by the court. This is the only other point of the motion requiring consideration. The case made by the petition was, as before stated, that plaintiff was caught on the trestle where he had no opportunity of escaping from the track, as he was passing over it in the proper discharge of his duties, by a passenger train running at an excessive rate of speed, owing to the failure of the engineer to give such warning signals of the approach of the train as were usually given. There was no other possible theory on which a verdict for the plaintiff could be sustained, and so the court, in effect, charged the jury. The cases are numerous that a watchman, in a normal condition, situated as the plaintiff was, with an unobstructed view for a considerable distance in both directions from the trestle, who permits a train to overtake and strike him on a railroad track at a place where it is possible for him to step aside and off the track, is himself guilty of such contributory negligence as precludes recovery. *Schofield* v. *Railroad Co.*, 114 U. S. 615, 5 Sup. Ct. Rep. 1125; Shear. & R. Neg. (4th Ed.) § 90, and cases cited. Hence the charge was carefully framed in accordance with the averments of the petition, so as to require the jury to find whether the plaintiff was overtaken on the trestle, and the verdict can only be supported on the theory that they so found. There was only one fact in the case, and that, under all the circumstances, cannot be regarded as being of a very persuasive character, that had any tendency to support such a finding. Three witnesses who visited the scene of the accident, from 8 to 10 hours after it occurred, testified that they found a spot of blood at the foot of the embankment of the east abutment, and on the north side of the trestle, and at a distance variously estimated from 30 to 50 feet in a direct line from the top of the trestle. The blood spot in question was so located that, upon the theory that it flowed from the wound in plaintiff's head, it might be inferred that he was thrown by the train from the trestle to the spot in question; that is, for a distance of some 30 or 50 feet. This was the only testimony in the case having any tendency to show that the plaintiff was caught on the trestle. The plaintiff himself was rendered unconscious for the space of some weeks by the wound he received on the head, and, after he regained consciousness, professed to be unable to recollect where he was when struck by the train, or any of the details of the accident. On the other hand, the testimony of the trainmen, and two passengers who testified in behalf of the plaintiff, tended very strongly to show that he was not caught on the trestle, but was struck some six or eight feet east of the bridge, and was at the time probably in a sitting posture,

in close proximity to the track. The conductor and brakeman who first went to the assistance of the plaintiff say that they found him lying unconscious, not over four feet from the rail or track, on the top of the embankment, and a few feet east of the trestle. He was certainly lying in that position when the two passengers above referred to (who must be regarded as disinterested witnesses) alighted from the train, as soon as it stopped. The assumption, therefore, that plaintiff was struck on the trestle, and thrown some 30 or 50 feet to the foot of the embankment north of the trestle, where the spot of blood is said to have been found, involves the further assumption that the conductor and brakeman not only willfully committed perjury on the trial, but that on the occasion of the accident they carried the plaintiff from the foot of a high embankment to the top, and laid him along-side the track, before any passengers had alighted from the train, and concealed from the passengers the fact that he had been found at the foot of the embankment. It appears to the court that the assumptions in question are wholly unwarranted by the appearance of the witnesses, their manner on the witness stand, and the physics of the case. No wounds or bruises of any sort appear to have been found on the plaintiff's body except that on the side and back of his head, that rendered him unconscious, which wound was of such character as might well have been made by the bumpers of a locomotive if the plaintiff was sitting in too close proximity to the track. It is almost inconceivable that the plaintiff's body would not have shown other serious wounds or marks than the one last indicated, if he had been struck on the trestle by a train moving with such velocity as to hurl him to a distance of 30 or 50 feet from the trestle to the foot of the embankment.

Again, the blood spot said to have been found at the foot of the embankment may as well be explained upon the theory that it was occasioned by a trifling injury to some of the men or animals who had been working at and around the embankment, as that it flowed from plaintiff's wound. The engineer of the train also testified that, as the train approached the bridge from the west, he saw a lighted lantern standing on the east abutment of the trestle; that no man was visible to him at the time, but, as the engine passed the lamp, the fireman exclaimed that they had hit a man who was lying on the side of the track by that lamp, and that the train was thereupon stopped. Questions of fact are, as a matter of course, for the jury to decide; but when the finding of a jury on a vital issue is of such character, considering the weight of evidence, as to raise a suspicion that undue sympathy, partiality, prejudice, or popular clamor has controlled their action, it is clearly the duty of the court to set their verdict aside. This is one of the most important and responsible, as it is one of the most delicate, duties that trial courts have to discharge. My own view of the question, whether the plaintiff was thrown from the bridge, after a careful review of the testimony, is so utterly at variance with that of the jury,—their finding seems to me to be so clearly contrary to the weight of proof,—that I am constrained to set the same aside, and to grant a new trial. It is so ordered.