LUEBKE vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*November 27 — December 11, 1883.*

*Railroads — Master and Servant — Negligence — Nonsuit.*

1. To go under a car standing alone upon a side track for the purpose of repairing it, is not, in itself, a dangerous service, the hazards of which are assumed by a person employed in that business.
2. One whose business it was to repair cars standing on certain repair tracks which were always protected, was ordered by his foreman

to repair a car standing upon another side track. While neces-
sarily under such car, and without knowledge of any danger, the
car was struck by an advancing train and pushed over him, caus-
ing an injury. In an action against the railway company for
such injury the answer admitted "that while cars are being re-
paired upon other than repair tracks, ordinary prudence, care, and
the customs and regulations of the company, require that such
work should not be done except while the car is being protected
by watchmen or other suitable protection." There was no proof
that a watchman had been placed, or other precaution taken, to
protect the car. *Held*, that from the fact that the accident hap-
pened it will be presumed that the proper precautions were not
taken, as the absolute and admitted duty of the company required,
and a nonsuit was therefore improperly ordered.

CASSODAY and TAYLOR, JJ., dissent, being of the opinion that
the negligence, if any, which caused the injury was the negligence
of a co-employee of the plaintiff, for which the company is not
liable.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for personal injuries received by the plaintiff while
in the employ of the defendant company. The facts are
stated in the opinion. At the close of the plaintiff's testi-
mony a motion for a nonsuit was granted, and from the
judgment entered accordingly the plaintiff appealed.

*Chas. M. Bice*, for the appellant.

For the respondent there was a brief by *John W. Cary*,
attorney, and *H. H. Field*, of counsel, and the cause was
argued orally by *Mr. Burton Hanson*. They contended:
1. The burden of showing negligence of the defendant was
upon the plaintiff, and he utterly failed to establish it.
*Steffen v. C. & N. W. R'y Co.*, 46 Wis., 259; *Wood v. C.,
M. & St. P. R'y Co.*, 51 id., 201; *Morrison v. Construction
Co.*, 44 id., 411; *Sorenson v. Menasha P. & P. Co.*, 56 id.,
338. 2. The dangers attendant upon the doing of this kind
of work were apparent, and plaintiff was bound to know
and avoid them. 2 Thomp. on Neg., 976, sec. 7. Having
voluntarily assumed the risk he is precluded from a recovery.
*Howland v. M., L. S. & W. R'y Co.*, 54 Wis., 226; *Kelley*

*v. C., M. & St. P. R'y Co.*, 53 id., 79; *Naylor v. C. & N. W. R'y Co.*, id., 661; *Flannagan v. C. & N. W. R'y Co.*, 50 id., 462; *Huyhes v. W. & St. P. R. R. Co.*, 27 Minn., 137; *Clark v. C., B. & Q. R. R. Co.*, 92 Ill., 43; *I., B. & W. R. R. Co. v. Flanigan*, 77 id., 365; *Valtez v. O. & M. R'y Co.*, *85 id.*, 500. 3. The negligence, if any, was that of a co-employee. The foreman of a gang of men occupying such a relation to them as is shown here is a fellow-servant. See *Brown v. W. & St. P. R. R. Co.*, 27 Minn., 162; 2 Thomp. on Neg., 1028, secs. 33, 34; *Slater v. Jewett*, 5 Am. & Eng. R. R. Cas., 526, note; *Hoth v. Peters*, 55 Wis., 405; *Dwyer v. Am. Exp. Co.*, id., 453; *C. & T. R. R. Co. v. Sinmons*, 11 Brad. (Ill.), 147. The men in the yard who made up trains and did the switching, and the car repairers, were all engaged in one common service, to wit, the work of preparing and inspecting cars, and distributing and making them up into trains for use in the business of the company. Each assumed the risk of the negligence of his fellows. *Dwyer v. Am. Exp. Co.*, 55 Wis., 453; *Howland v. M., L. S. & W. R'y Co.*, 54 id., 226; *Schadewald v. M., L. S. & W. R'y Co.*, 55 id., 569; *McCosker v. L. I. R. R. Co.*, 84 N. Y., 77; *Besel v. N. Y. C. & H. R. R. R. Co.*, 70 id., 171. 4. The plaintiff was guilty of contributory negligence. See *Hoth v. Peters*, 55 Wis., 405.

ORTON, J. The plaintiff had been employed by the company to work at repairing cars on two tracks called repair tracks, which were kept locked except when a car had been repaired on one of the tracks and it was unlocked and the car run out. On the day of the accident, while the plaintiff was at work on the regular repair tracks, he, with another, was ordered by the foreman to go a short distance upon a side track to repair a car standing there and detached. He did not know that they were to make up trains on this track, and apprehended no danger. While he was under the car

making the necessary repairs, and where it was necessary for him to be for that purpose, an advancing train of cars struck this car under which the plaintiff was on his knees to repair, and pushed it over him and caused his injury. These are briefly the facts. There was no evidence that any watchman had been placed to guard this car so being repaired, or the plaintiff so repairing it, from danger from approaching cars on that side track. When it is considered that this kind of service upon the regular repair tracks was amply protected by locking up the tracks (a most praiseworthy precaution against danger from the negligence of others), the admission in the answer of the company to this action is candid and praiseworthy. The answer admits "that while the cars are being repaired upon other than repair tracks, *ordinary prudence, care, and the customs and regulations of the company*, require that such work should not be done except while the car is being protected by *watchmen* or other suitable protection." This admission of the answer sufficiently disposes of the claim, most unworthily made on the argument, that it was the duty of the repairer himself, who is compelled to go under the cars to repair them, to provide his own watchmen and look out for himself.

Before seeking to apply the well-known principles of law to such a case, it may be well to dispose of the position assumed by the learned counsel of the respondent, that this plaintiff took the chances and hazards of a most dangerous service. Is this so? When a car is standing still and disconnected from any power which could move it, and in a place where there was not the remotest reasonable suspicion or apprehension that it would be moved or at all disturbed, where is the danger? There would be nearly the same danger in degree, and the same in principle, if a person should go under a two-horse wagon in a farmer's yard, to repair it, without any apprehension that the farmer would hitch to it while he was so under it, and draw it over him. If the rule

is to be established that any railway service is dangerous, because all employees are careless and negligent whose duty it is to guard him from injury, then there is no railway service which is not dangerous, and the employee takes his chances, not that the particular service or duty is dangerous in itself, but that it will be made so by the habitual negligence of everybody who might be able, by his negligence, to injure him. Under the effect of such a rule, even travelers and passengers take the chances of a most hazardous and dangerous method of travel, and cannot complain if they are injured by such negligence as is the normal characteristic of railway service.

There are some presumptions upon which any one connected with the railway service, either as employee or passenger, has a right to rely. They are (1) that the company has provided all necessary and proper means and appliances for his protection; and (2) that the employees themselves will do their duty in such responsible service. In this view, the business of repairing this car by the plaintiff, by going under it, which was necessary, was not dangerous service. The car would not move over him, unless moved by some other force applied by the gross negligence of some one else. The car standing still and disconnected was not dangerous any more than any other inert body, and it was perfectly safe to lie down under its wheels, if necessary, as it could do no harm. The danger of this service consisted in the outrageous carelessness of somebody else in the management of the trains on that track, which he was not only not bound to presume, but he had no right to presume or expect. No! the service was not dangerous in itself, like going between cars, when in motion, to couple or uncouple them, or to go upon cars, when in motion, to set the brakes, or other similar services, concerning which it has been held that the service is dangerous, and the employee takes the chances and hazards thereof.

Here the company admit that it was their duty to have had a watchman on this ground to prevent this collision, or at least to have done what they reasonably should have done to prevent it. The circuit court granted a nonsuit in the case on the testimony in behalf of the plaintiff. There was no evidence whatever that the company had provided such a watchman. If the case had been fully tried the company might have proved that such an admitted and reasonable precaution had been taken. In such a state of the case, what is the presumption of the law as to this most important fact? If a watchman had been provided for that duty, the *first* presumption would be that he was on duty at the proper place; and if so, *secondly,* that he discharged that duty to prevent, if possible, the moving of the cars against the one under which the plaintiff was, so unconsciously of danger, at work, and the collision would not have occurred.

The conclusion from these presumptions is that the company did not, in this instance, provide a watchman or any other precaution, which they admit in their answer it was their duty to do. Besides, negatively at least, there was proof that no watchman was there. The company sought to show, on cross-examination of the plaintiff, that the person who was working with him under the car, or some one who did not arrive on the ground and who was to assist him in the work, was the watchman; but this is not only denied by the plaintiff, but common sense would indicate that under the car being repaired was no proper place for a watchman to prevent a train of cars, far distant on the track, from running against the one under which he was at work. It may be, if it was in proof that the company employed a watchman at this place who was competent, the company performed its full duty. To this extent, at least, they admit their duty, and that is sufficient for this case. This question is more one of fact than of law in this case, because the defendant company admit the law as claimed on behalf of

the plaintiff. But the authorities are abundant that the company owed the absolute duty to the plaintiff, situated as he was, in the common and necessary business of the company, to have had a competent watchman to guard against his injury from moving the car under which he was at work. The cases of *L. S. & M. S. R'y Co. v. Lavalley*, 36 Ohio St., 221, and *Vose v. L. & Y. R'y Co.*, 2 Hurl. & N., 728, are nearly parallel and closely in point, and many cases in this court are in principle the same. See *Wedgwood v. C. & N. W. R'y Co.*, 41 Wis., 483; *Bessex v. C. & N. W. R'y Co.*, 45 Wis., 477; *Smith v. C., M. & St. P. R'y Co.*, 42 Wis., 526. Many other cases might be cited to show that the duty to provide a watchman, or some other proper precautions against the injury of one doing such service, was clearly that of the company; but this duty, as said several times before, is admitted in the answer. It is not perceived how the question of co-employees, or of the contributory negligence of the plaintiff, can have any place. The case should have gone to the jury, and the evidence upon the most vital issue should have been presented; for as the case stood when the nonsuit was granted, the defendant was clearly in fault in not providing a watchman, or some other proper precaution, to guard the safety of the plaintiff when placed by the company where he could not look out for himself.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

CASSODAY, J. In answer to a question from the bench, counsel for the plaintiff frankly admitted, in effect, that if there was any negligence on the part of the defendant it consisted in the fact that the foreman ordered the plaintiff to do the repairing in question at the place of the injury, without providing a watch or knowing that the watchman was on duty to guard him during the time of such repairing. If counsel was correct in that statement, then I apprehend

the court would be agreed that there can be no recovery; for it is well settled by this court that such foreman was, at the time, a co-employee with the plaintiff, and that the latter could not recover for any injury resulting from the negligence of the former. *Brabbits v. C. & N. W. R'y Co.*, 38 Wis., 289; *Howland v. M., L. S. & W. R'y Co.*, 54 Wis., 226; *Hoth v. Peters*, 55 Wis., 405; *Dwyer v. Am. Exp. Co.*, 55 Wis., 453; *Schadewald v. M., L. S. & W. R'y Co.*, 55 Wis., 577; *Heine v. C. & N. W R'y Co.*, 58 Wis., 525. In the last case cited a strenuous effort was made to induce this court to recede from the rule thus settled, and to follow what was characterized as the more humane and reasonable rule adopted in Ohio and some other states, but which had long ago been expressly repudiated in this state. *Moseley v. Chamberlain*, 18 Wis., 705. The effort, however, was unavailing.

The case of *L. S. & M. S. R'y Co. v. Lavalley*, 36 Ohio St., 226, cited in the opinion of the majority of the court, puts the liability of the company on the ground that the foreman was negligent in directing the plaintiff below to repair the car without either keeping watch himself or requiring some of his other men to keep such watch. That, as I understand, is the very doctrine which this court has expressly refused to adopt; and, in so far as it may have received the sanction of the majority opinion, it is, as it seems to me, in direct conflict with the rule settled by this court as above indicated. Possibly I may be wrong, but I cannot escape the conviction that if the injury in question was the result of negligence on the part of any one, then it was such negligence as was suggested by plaintiff's counsel, on the part of the foreman, or, if not him, then the man who had been working with the plaintiff, or the brakeman, or the gang-boss, who seems to have had the immediate charge of the repairing; for there is no evidence that any other person connected with the company had any knowl-

edge or information that any such repairing was to be done on the car and at the place in question, much less that the plaintiff was about to do, or in the act of doing, such repairing. For an injury resulting from the negligence of any of those persons, it seems to me the plaintiff is not entitled to recover, by reason of the rule settled by this court, as above indicated. Nor am I able to find any fact or circumstance in the case which brings it within any established exception to that rule. I find no admission in the answer which, taken together, as it should be, can in any way aid the plaintiff. A party seeking to recover on the ground of negligence certainly has the burden of proving it. A specific disclaimer of negligence does not, as it seems to me, cast upon the party disclaiming the burden of proving due care or the absence of negligence. A presumption of negligence should not be indulged from an injury which may have been the result of a mere accident. *Kelley v. C., M. & St. P. R'y Co.*, 53 Wis., 74. Such being the recognized rules of law, I am unable to find anything in the case from which an absolute or *prima facie* liability may be predicated upon the mere fact that the plaintiff, in pursuance of an order from the foreman, and the immediate direction of the gang-boss, went under a car standing upon an unlocked side track, where other cars were liable to go, and did go, and cause the injury.

TAYLOR, J. I concur in the above opinion of Justice CASSODAY.