## CHEENEY v. THE OCEAN STEAMSHIP COMPANY.

1. Where it was essential to the safety of laborers employed by a steamship company in the loading of its ship, whose place of work was in the hold of the vessel, that a "hatch-tender" should be stationed at the hatchway to warn them when bales of cotton were about to be thrown into the hold, it was the duty of the company to supply a person to be stationed at the hatchway for that purpose.

2. The superintendence of this work having been entrusted to Hoffman, if he represented the company in the duty of furnishing a sufficient supply of employees to effect the work with reasonable and ordinary safety to those engaged in performing it, he was, as to this duty, the *alter ego* of the company, and not a fellow-servant of the laborers.

3. If Hoffman was general foreman over the loading of the whole ship, the laborers were entitled to rely upon his promise, when he ordered them to go into the hold and begin work, that a "hatch-tender" would be stationed at the hatchway; and if one of them, relying upon this promise, obeyed the order, and no such person was placed at the hatchway, the company would be responsible for a personal injury occasioned by his being struck by a bale of cotton thrown into the hold without warning, if he did not know or had no reason to suppose that it was about to be thrown down, although the person who threw it down was a fellow-servant and was negligent in doing so in the absence of a "hatch-tender" without himself giving notice. If a "hatch-tender" was duly stationed but afterwards absented himself without the knowledge of Hoffman, his absence would be the negligence of a fellow-servant and not that of the company. If there was no promise to station a "hatch-tender" and the plaintiff went into the hold knowing there was no "hatch-tender," he could not recover.

4. On the second trial of this case, nothing appearing from which it could be inferred that there was a "hatch-tender" employed as such, or that any person was in fact stationed at or ordered to attend the hatchway, the court erred in granting a nonsuit.

December 18, 1893.

Action for damages. Before Judge MACDONELL. City court of Savannah. July term, 1893.

SAUSSY & SAUSSY, for plaintiff.
LAWTON & CUNNINGHAM, for defendant.

SIMMONS, Justice.

Cheeney sued the Ocean Steamship Company for damages from personal injuries alleged to have been caused by his being struck by a bale of cotton which was thrown from the hatchway into the hold of the defendant's ship and fell upon him while he was engaged in its service stowing cotton in the hold. He alleged that it was the company's duty to give notice at the hatchway whenever a bale of cotton was thrown into the hold, so that persons engaged in stowing the cotton below might get out of the way of the falling bale and avoid injury to themselves, but at the time in question the company did not give such warning, and the bale was thrown down without notice to the plaintiff; that he was acting with due care and caution; that the company had always kept a man stationed at the hatchway, as was its duty, to give warning whenever a bale was thrown down, but on this occasion it did not have and keep a man so stationed, and did not cause any notice or caution to be given when the bale was thrown down, and was thus guilty of gross negligence and indifference to the safety of its employees. On the first trial of the case the plaintiff obtained a verdict, and this court, upon exceptions to the overruling of the defendant's motion for a new trial, reversed the judgment of the court below. (86 *Ga.* 278.) The case is now before us upon exceptions to the grant of a nonsuit.

We think the court erred in granting a nonsuit. Our decision when the case was here before was based upon a materially different state of facts from that appearing in the present record. On the former trial it was shown that a man had been placed at the hatchway to give notice to the hands below, and that this man was at his post and in the discharge of his duty a few minutes before the injury occurred; and we held that his negli-

gence in absenting himself from the hatchway and failing to give notice was the negligence of a fellow-servant, and therefore no recovery could be had. At the last hearing nothing appeared from which it could be inferred that any person was stationed at or ordered to attend the hatchway or was employed for that purpose; indeed the evidence tends to show the contrary. Moreover, it now appears, but did not appear at the first trial, that before the plaintiff went into the hold, the foreman in charge of the work promised him that a man would be stationed at the hatchway to give warning as the bales were about to be thrown down.

It is well settled that among the legal obligations of a master to his servant, forming a part of the implied contract between them, is that of making reasonable provision to protect the servant against dangers to which he is exposed while conducting the work he is employed to do, and of supplying a sufficient number of servants to effect the work with reasonable and ordinary safety to those engaged in performing it; and if the proximate cause of an injury sustained by the servant while so engaged is the failure of the master to exercise ordinary prudence in this respect, the master is liable, unless the servant may fairly be regarded as having assumed the risk incident thereto. The failure of the master in this respect stands upon the same footing as the failure to supply suitable and sufficient machinery or appliances for conducting the work safely. Wood, Master and Servant (2d ed.), §394, and cases cited. The evidence in this case tends to show that it was essential to the safety of those employed in the hold of the vessel as the time in question, that a "hatch-tender" should be stationed at the hatchway to warn them when bales were about to be thrown into the hold; and if this was so, it was the duty of the company to supply a person to be stationed at the hatchway for that purpose. If

all the men employed in the loading of the ship were engaged in other parts of the work from which none of them could be spared to give warning at the hatch, the number of employees ought to have been increased, and one of them directed to perform this particular service. So long as no employee was charged with the duty of giving warning at the hatch, there was a failure on the part of the defendant to carry out its implied contract with those employees for whose safety such warning was necessary.

The plaintiff seems to rely, however, not so much upon the failure of the company in its general duty of supplying a "hatch-tender," as upon the failure to comply with a special undertaking on this particular occasion to station one at the hatchway, which undertaking, he claims, was the condition upon which he went into the hold and entered upon the work. It appears from the evidence that one Hoffman, the foreman under whose direction he was working, ordered the plaintiff and another employee to go into the hold and begin work, but they hesitated about doing so, and when asked by Hoffman why they did not go down as he had ordered, they told him they could not go down because there was nobody to attend the hatch. He said they must go down, but they still hesitated, until finally Hoffman said, "Well, go on down and get to work, and he would put a hatch-tender there." Relying upon this promise they went down and began work. The plaintiff testified that he would have refused to go into the hold if he had not expected that a "hatch-tender" would be placed at the hatch. It was contended on the part of the defendant, that if Hoffman was negligent in failing to station a man at the hatch, his negligence was that of a fellow-servant of the plaintiff, and no recovery could be had. If Hoffman had authority to employ such men as were necessary to effect the work with reasonable and ordi-

nary safety, or authority to direct that one of the employees should attend the hatch, he was, as to the duty of supplying a "hatch-tender," the *alter ego* of the company, and was not a fellow-servant of the other employees in such sense as to cast upon them the risk of his failure to discharge that duty. There was sufficient evidence to show, *prima facie*, that he was invested with this authority, and there was no evidence to the contrary. The work of loading the company's ships appears to have been under the general supervision of another, but it appears that Hoffman was foreman of the ship on which the plaintiff was working, that the men employed in the loading of the ship were bound to obey him, and that he had authority to "check on" as many men as were necessary for the work conducted under his supervision. The acts of a person authorized by the master to perform a duty which the master owes to his servant, in so far as they pertain to that duty, are the acts of the master himself; and when the servant is injured by reason of a failure to perform it, the master cannot escape liability by setting up that the duty devolved upon a fellow-servant of the person injured. An obligation which the law imposes upon the master for the benefit of his servants cannot be evaded by shifting it upon one of their number. See *Atlanta Cotton Factory* v. *Speer*, 69 *Ga.* 137, 148; *Savannah, Florida & Western Ry. Co.* v. *Goss*, 80 *Ga.* 524; Wood, Master and Servant (2d ed.), §§436, 438 *et seq.*, 447, 448; McKinney, Fellow-Servants, §25; 7 Am. & Eng. Enc. of Law, 834, and cases cited by these authorities; *Flike* v. Boston & Albany R. Co., 53 N. Y. 549, 553; 13 Am. Rep. 545.

If Hoffman represented the defendant in making this promise, the plaintiff had a right to rely upon it when he obeyed Hoffman's orders and entered upon the work, and his knowledge when he went into the hold, that no one was then at the hatch to give warning, would not

preclude a recovery. It does not appear that there was any imminent danger at the time of his going into the hold, for no cotton was then being thrown into the hold, and he was there fifteen or twenty minutes before any came down; nor did anything happen while he was at work there, and up to the time he was hurt, to indicate that the promise had not been fulfilled. The bale that struck him was the first that came down. "If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that the parties may and should, where practicable, come to an understanding between themselves regarding matters of this nature." Cooley, Torts (2d ed.), §559, and cases cited. And see, Wood, Master and Servant (2d ed.), §378 *et seq.*; Clark *v.* Holmes, 7 Hurlst. & Norm. 944; Hough *v.* Rwy. Co., 100 U. S. 213; New Jersey etc. R. Co. *v.* Young, 1 U. S. Appeals (2d Circ.), 96, and cases cited; Laning *v.* N. Y. Cent. R. Co., 49 N. Y. 521; Thorpe *v.* Mo. Pac. Ry. Co., 89 Mo. 650; 58 Am. Rep. 120.

If the foreman complied with his promise and stationed a man at the hatch, and the person so stationed negligently absented himself, without the knowledge of the foreman, his absence would be the negligence of a fellow-servant and not that of the company. If there was no promise to station a man at the hatch, and the plaintiff went into the hold knowing there was no

"hatch-tender," we think, in view of the evidence as to the danger of conducting the work without one and his own knowledge of the danger, he would not be entitled to recover.

The fact that the employee who threw the bale into the hold was negligent in doing so when no "hatch-tender" was there, without himself warning those in the hold, would not defeat the plaintiff's right to recover, if the defendant was negligent in failing to supply a "hatch-tender." The negligence of a fellow-servant does not excuse the master from liability to a coservant for an injury which would not have happened had the master performed his duty. "If the negligence of the master contributes to the injury to the servant, it must necessarily bcome an immediate cause of the injury, and it is no defence that another is likewise guilty of wrong." McKinney, Fellow-Servants, §16, and cases cited; Grand Trunk R. Co. v. Cummings, 106 U. S. 700; N. J. etc. R. Co. v. Young, 1 U. S. Appeals, 96; Cone v. R. Co., 81 N. Y. 206; Coppin v. R. Co., 122 N. Y. 557; Paulmier v. R. Co., 5 Vroom (N. J.), 151; Clark v. Soule, 137 Mass. 380; Pullman Palace Car Co. v. Laack (Ill.), 18 Lawy. Rep. Annot. 215.

What was said in the former decision in this case as to the negligence of the employee who threw down the bale, does not conflict with anything here said, because, under the evidence then before us, no failure of duty on the part of the defendant was shown.

*Judgment reversed.*