Hillsborough, }
April 1, 1902. }

## McLaine v. Head & Dowst Co.

Where one person suffers injury through the negligence of another in the same service, the question whether they are fellow-servants within the rule exempting the master from responsibility is not determined by the fact that they were engaged in a common employment under the same general control and paid by the same principal, but depends upon whether the negligent servant, in the act or omission complained of, represented the master in the performance of any duty owed by the latter to the person injured.

The negligent failure of a foreman to notify a laborer in a trench of the dumping of a load of earth does not constitute a breach of the master's duty to provide a safe and suitable place in which his servants may do their work.

A guaranty of protection against dangers of the employment, made by a foreman to a servant whom he has assigned to work, is not binding upon the master when made without his authority, either express or implied.

Case, for personal injuries. Trial at the September term, 1901, of the superior court, before *Peaslee*, J., and a jury. The plaintiff's evidence tended to prove that on August 20, 1900, he was employed by the defendants as a laborer, leveling and tamping the earth in a trench from fifteen to twenty feet deep. The earth was dumped into the trench by cartloads, and the practice was for the boss of the gang to warn the men in the trench when a load was to be dumped. This boss, or foreman, was in charge of the whole gang of teamsters and shovelers, who were employed in filling the trench, and the plaintiff had known him as a foreman all summer. When the plaintiff was set at work the boss said : " You go down to work there. I will take care of you fellows." The boss did thereafter give the warning, both before and after the accident. At the time of the accident no warning was given, and in consequence of the omission the plaintiff failed to notice the falling load of earth and stones, and was injured thereby. The plaintiff could not see the load from the trench where he was working and relied upon the warning. A nonsuit was ordered, subject to exception.

*Pattee & George*, for the plaintiff.

*David A. Taggart* and *George H. Bingham*, for the defendants.

Parsons, J.   " A servant who is injured by the negligence of
a fellow-servant in the course of their common employment, with-
out any fault on the part of the master, can maintain no action
against the master for such injury."   Fifield v. Railroad, 42 N. H.
225, 236; Hanley v. Railway, 62 N. H. 274; Griffin v. Company,
67 N. H. 287; Lebarge v. Berlin Mills, 68 N. H. 373; Fournier
v. Company, 70 N. H. 629.   The test whether the individual em-
ployees concerned were fellow-servants is not found in the fact that
they were engaged in a common employment under the same gen-
eral control and paid by the same principal, but is whether the neg-
ligent servant, in the act or omission complained of, represented
the master in the performance of any duty owed by the master to
the servant injured.   The responsibility of the master is deter-
mined by the nature of the act in question, and not by a differ-
ence in rank or grade of service between particular servants.
Jaques v. Company, 66 N. H. 482; Small v. Company, 94 Me.
551; Bail. Mast. & Ser. 284, 286.

The plaintiff, the foreman, and the teamsters were engaged in
a common employment filling the trench.   The plaintiff in the
bottom of the ditch was injured by the negligent dumping of earth
and stones upon him.   If he had been warned, he could have pro-
tected himself and escaped injury.   The liability of the defend-
ants for the failure of the foreman to give the warning, assuming
that such failure was due to negligence, is determined by the
answer to the question whether the duty of giving the omitted
warning was a duty personal to the master.   The rank or grade of
the employee to whom this duty was in this case entrusted is
immaterial, because the foundation of the claim is the non-per-
formance of an alleged non-delegable duty.   The only breach of
the master's duty suggested is the failure to provide the plaintiff
with a safe place in which to work and to keep it safe.   It is
urged that, as the plaintiff could not safely work in the bottom of
the ditch without warning, the master's duty as to the place was
not performed unless the warning were given.   It is not suggested
that the place itself in which the plaintiff was at work was unsafe.
There was no secret danger unknown to the plaintiff; at least,
the injury is not attributed to such a cause.   The plaintiff's injury
was due to a danger arising in the progress of the work.   So long
as in the work of filling the trench no earth was thrown into it
in the plaintiff's vicinity, the place where he was at work was
safe.   His injury resulted from the prosecution of the common
work by the defendants' other employees.   The place and the dan-
ger varied as the work progressed.   The place was not a perma-
nent location prepared by the master for the work, but was made
and changed by the work the servants were doing.   Where the

supplying of a work-place is part of, or necessarily results from, the work being done, and is to be done by the servants themselves, the master is not liable for a co-servant's negligence in the progress of the work, rendering the place unsafe. *Armour* v. *Hahn*, 111 U. S. 313, 318; *Zeigler* v. *Day*, 123 Mass. 152, 154. An illustration is to be found in the cases where a part of the work of the servants is to build scaffoldings or stagings upon which to work. In such cases it is no part of the personal duty of the master to see to it that such places are safe. His duty ends with the supply of suitable materials. *Manning* v. *Manchester Mills*, 70 N. H. 582. Having provided a safe place, the master is not liable upon the ground of that obligation if the place is made unsafe by the negligence of servants employed, not to provide the place, but to do the work in the place. *Nash* v. *Company*, 62 N. H. 406; *Bodwell* v. *Company*, 70 N. H. 390; *Hussey* v. *Coger*, 112 N. Y. 614, 618; *Cullen* v. *Norton*, 126 N. Y. 1; *Daves* v. *Company*, 98 Cal. 19,— 35 Am. St. Rep. 133; *Hermann* v. *Company*, 71 Fed. Rep. 853.

The obligations of the master as to machinery and appliances and in respect to the place are the same in substance, and may both, as well as his duty in the employment of servants, be comprehended by the use of the term "instrumentalities." The master's duty is to exercise care to provide reasonably safe and sufficient instrumentalities for the work. The execution of the work is the duty of the servant. "The master has not contracted or undertaken to execute in person the work connected with his business." *Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326, 332. When the repair of the machinery or appliances furnished by the master requires skill and practical knowledge, the obligation is that of the master; but when the inspection and repair is incidental to the use of the appliance, *i. e.*, is a part of the work of its use, such inspection and repair is the duty of the servant. *Jaques* v. *Company*, 66 N. H. 482, 484; *Bjbjian* v. *Company*, 164 Mass. 214, 219; *Cregan* v. *Marston*, 126 N. Y. 568. Upon the same principle, when the danger arises not from the place itself, but from the use of it for the work, and no special skill or experience beyond that involved in doing the work is required to maintain the safety of the place, the maintenance of such safety is the duty of the servant because it is a part of the work. The plaintiff cannot recover on the ground of the breach of the master's obligation as to the place, because there is no evidence of negligence of the master in that respect.

The contention that the master's duty as to the place is in question here, involves a confusion of ideas. It is not the duty as to the place itself that is in question, but the question is as to the extent of the duty of the master to guard the servant from dan-

gers arising in the course of the work from the work itself. The master is bound to take reasonable precautions to insure the servant's safety (*Foss* v. *Baker*, 62 N. H. 247, 251); or as the rule is usually expressed, to provide such reasonable rules and regulations as will enable the servants to do the work in safety. *Northern etc. R. R.* v. *Peterson*, 162 U. S. 346, 353. The measure of the master's duty in this regard is ordinary care. The law is not varied by the nature or the extent of the enterprise. " The responsibilities of the defendants in this case, and of the individual who hires two laborers in harvest, or two carpenters to erect a staging and shingle his house, are to be determined by the same legal tests." *Fifield* v. *Railroad*, 42 N. H. 225, 238. The individual who employs two laborers to dig a ditch is not required to stand over them to give warning, or to prevent one from throwing earth upon another. Neither is he required to employ a watchman to give warning to the one when the other is about to throw a shovelful of earth into or out of the trench. There is no occasion for such a precaution, not because the rule of law is different, but because ordinary care does not demand it in such a case. As the number of servants is enlarged and the work extended, the probability of injury of one by the other is increased. When the nature of the work reasonably demands rules or precautions, the master's duty arises. The master's duty is performed by the adoption of a reasonably suitable method. If ordinary care requires that a warning of dangers arising from the work should from time to time be given to his servants as the work progresses, it is the master's duty to provide for such a warning. Having made provision for the warning by entrusting the duty to a competent person, he is not liable for the negligence of the person entrusted with the duty. *Hussey* v. *Coger*, 112 N. Y. 614; *Ocean Steamship Co.* v. *Cheeney*, 86 Ga. 278; *Cheeney* v. *Steamship Co.*, 92 Ga. 726,— 44 Am. St. Rep. 113; *Luebke* v. *Railway*, 59 Wis. 127,— 48 Am. Rep. 483; *S. C.*, 63 Wis. 91,— 53 Am. Rep. 266; *Portance* v. *Company*, 101 Wis. 574, 579,— 70 Am. St. Rep. 932; *Donovan* v. *Ferris*, 128 Cal. 48,— 79 Am. St. Rep. 25; *Hartvig* v. *Company*, 19 Or. 522; *The Harold*, 21 Fed. Rep. 428; *Hermann* v. *Company*, 71 Fed. Rep. 853; *The Pioneer*, 78 Fed. Rep. 600; *Martin* v. *Railroad*, 166 U. S. 399, 403. For other cases to the same effect see 54 L. R. A. 120, note (f), where it is said that " all the authorities with the exception of the single New Jersey case (*Belleville Stone Co.* v. *Mooney*, 61 N. J. Law 253) seem to be agreed that a master is not liable for the negligence of a servant in failing to notify a co-employee of the approach of a transitory peril which, as the work progresses, will render the environment unsafe for a brief period, but which may easily be avoided if

due warning is given." The New Jersey case cited seems not only contrary to all the authorities as to the particular duty of warning, but also in violation of the general rule, that a master is not responsible for the lack of safety in the place occasioned by the negligence of another employee doing the work in the place,. which is recognized as sound in New Jersey as well as elsewhere. *Curley* v. *Hoff*, 62 N. J. Law 758; *Stewart* v. *Paper Co.*, 96 Me. 30. No sufficient reason is suggested for following the apparently anomalous doctrine of this case.

The logical soundness of the general rule appears from its. application to the facts in this case. The plaintiff was injured because the foreman negligently directed or permitted the earth to be thrown upon him. If the duty of warning is personal to the master, the duty to take care that the earth should not be thrown upon the servant is equally so. The difference is merely one of statement. If the master is liable here for the negligence of the foreman in omitting the warning, he. would be liable for the negligence of the teamster who dumped his load without warning if the duty rested upon him to give warning, or for the negligence of the single shoveler who in like manner emptied his shovel upon his companion. In the latter case, it would be entirely immaterial whether the. one in the ditch or the one upon the ground above was foreman. The cause of the injury is the negligent throwing of the earth by the one upon the other. The absence of a warning by which the injury would have been escaped is merely evidence of negligence in the person performing the act. As the act is that of a servant, the negligence is also. It is immaterial whether the act and the omission are chargeable to the same person. The division of duty necessary in large enterprises does not make that the act of the master which in smaller concerns is the negligence of the servant. The fact that the foreman had control over the plaintiff and directed him where to work does not, under *Jaques* v. *Company*, make the master liable for the negligence in the work of a fellow-servant. *Keenan* v. *Railroad*, 145 N. Y. 190, 196. Assuming that the power of direction involved the exercise of the master's duty (which is not generally true), the plaintiff's injury did not arise from any negligence in the performance of such duty.

The parties agree in an amendment to the case, that the only questions raised or transferred are (1) the liability of the defendants for the failure of the boss, who was present performing the duty of giving warnings, to warn the plaintiff at the time of the accident; and (2) the effect of the assurance of protection by the foreman to the plaintiff as an inducement to him to enter upon and continue at the work assigned him. Therefore, whether the

personal duty of the employers required them in this case to make rules for the conduct of the business or provision for a warning, and whether such duty was discharged by the assumption by the foreman of the task of giving warning, are questions not raised or presented for consideration.

While there is no implied contract for the breach of which the defendants are liable, they might be personally liable upon an express contract if one were made. There is evidence of an express undertaking by the foreman that he would "take care of" the plaintiff. Construed in the light of the practice shown by the evidence, this might be found to constitute an agreement to give warning, or a warranty that one should be given. Accompanied by evidence of authority from the defendants, such contract and its breach would establish the plaintiff's case. The only evidence is that the foreman was in charge of the whole gang, both teamsters and shovelers, and had been all summer. It is to be inferred, therefore, that the foreman had authority to direct the men where to work. If it were necessary to place a man to give warning, he had that authority. If the assurance had been that some one — the foreman, or some one else — would be charged with the duty of warning, and no person had been directed to perform that duty, the failure might be held a breach of the master's duty entrusted to him. But there is no evidence that the foreman was authorized to do more in the name of the defendants than perform so much of the defendants' legal duty as was entrusted to him. The duty to select some one to give the warning having been performed by the assumption of that duty by himself, of whose competency no question is made, his authority so far as shown by the evidence was exhausted. In his capacity of watchman, he had no more authority to pledge the defendants as insurers of the plaintiff's safety than any man whom he might have directed to perform that duty. His authority to act for the defendants being only that implied by law, he had not authority to act for them outside the duty which the law imposed upon them. If the law imposed upon them the duty of warning, the express agreement is immaterial except upon the question of the plaintiff's care, because the defendants would be equally liable without as with the agreement; while if they are not liable, there is nothing in the case empowering the foreman to agree they should be. What the foreman said was the mere promise or guaranty of a fellow-servant. It does not purport to be anything more. The promise of a servant that he will exercise care in the work entrusted to him to avoid injury to a fellow-servant is not the promise of the master. *Martin* v. *Railroad*, 166 U. S. 399, 403 ; *Schott* v. *Bank*, 63 N. Y. Supp. 631 ; 54 L. R. A. 116, note (2).

It does not appear that the foreman hired or discharged the other employees. Entrusted with the authority to make the contract of hiring, reasonable and necessary stipulations introduced by him into the contract would be binding upon the defendants. As part of such a contract, a reasonable and necessary special guaranty of notice might bind the defendants. *Bradley* v. *Railroad*, 62 N. Y. 99. The case discloses nothing of the sort. The plaintiff has placed his claim solely upon the failure to give warning. The lack of warning, unexplained, may be evidence of negligence in the person whose duty it was to give it; but to charge the defendants as employers, the plaintiff must go farther and show that the failure is chargeable to negligence, either in employing incompetent servants or an insufficient number, or in placing the duty of warning upon one so occupied with other duties as to be incompetent to perform this, or to a failure to make proper rules and regulations for the conduct of the work. In the absence of any evidence upon either point suggested, the nonsuit was properly ordered.

*Exception overruled.*

Blodgett, C. J., and Chase and Walker, JJ., concurred.

Remick, J., *dissenting*. 1. It appears that the plaintiff, one of the defendants' servants, was directed by the defendants' "foreman in charge" to work in a trench from fifteen to twenty feet deep, leveling and tamping earth and stones which were being dumped into the trench by other servants of the defendants, by cartloads from above. The plaintiff could not see the loads from the trench where he was set to work. Warning to the plaintiff, as the loads were dumped, "was manifestly necessary to the plaintiff's safety." When the plaintiff was set to work in the trench, the foreman said: "You go down to work there. I will take care of you." It was accordingly the foreman's practice to warn the men in the trench when a load was to be dumped, and the plaintiff was accordingly notified by him of every load until the one in question. At the time of the accident, the foreman omitted the customary warning; and in consequence of the omission, the plaintiff, relying upon the warning, failed to notice the load of earth and stones, and was injured thereby. Upon these facts I think the plaintiff was entitled to go to the jury, and that the nonsuit was improperly ordered.

As an original question, viewed in the light of natural reason and justice, I think all will agree that, when a master, through his foreman in charge, orders a servant to work in a deep trench, car-

ing for earth and stones, which are being dumped into it from a point above and outside of the line of his vision, assuring him, by express declaration, as well as by previous practice of warning, and by the implication arising from the nature and necessity of the service, that he will be safeguarded by warning, he should be held liable to the servant, who, while proceeding with the work in accordance with the foreman's direction and in reliance upon such assurance and previous practice of warning, is injured by the neglect of the foreman to give such warning.

But it is suggested that this conclusion, so reasonable and just in the abstract, is not permissible in the present case, because, it is claimed, the neglect of the foreman to give the warning was the neglect of a fellow-servant, for which, according to the doctrine declared by Chief Justice *Shaw*, in *Farwell* v. *Railroad*, 4 Met. 49, announced in 1842 and since generally adopted in England and America, the defendants are not liable.

There is neither disposition nor occasion in the present case to question the soundness of the general principle underlying that decision; but when an extreme and uncalled-for application of it is urged, to the prevention of manifest justice, it is not improper to observe that the doctrine was announced with hesitation by the learned chief justice (*Farwell* v. *Railroad*, *supra*, 55, 61, 62); that it has been questioned and condemned by able writers and courts (Poll. Torts 94; Shearm. & Red. Neg. (3d ed.), s. 86; *Little Miami R. R.* v. *Stevens*, 20 Ohio St. 415, 431, 432; *Burke* v. *Railroad*, 34 Conn. 474, 479, 480); that it was never accepted outside of England and America (Poll. Torts 89); that it has been substantially nullified by legislative action in the former, and essentially modified, if not abrogated, by statute in many of the states of the latter country, including the commonwealth in which, with doubtful accuracy (note to *Nolan* v. *Railroad*, 39 Atl. Rep. 128), it is said to have been first declared; and finally, that, where it is still upheld, judicial decisions are in hopeless and irreconcilable confusion respecting its application. *Johnson* v. *Company*, 135 Mass. 209, 211, 212; *Rogers* v. *Company*, 144 Mass. 198; *Haskell* v. *Anchor Works*, 178 Mass. 485; *Darrigan* v. *Railroad*, 52 Conn. 285,— 52 Am. Rep. 590; *Nall* v. *Railway*, 129 Ind. 260; *Chicago etc. R. R.* v. *Ross*, 112 U. S. 377; *Baltimore etc. R. R.* v. *Baugh*, 149 U. S. 368. It is apparent from these observations that no harmonious and consistent system is involved, but an "intricate and clumsy state of things" (Poll. Torts 94) against which legislatures and courts are on the move. Note to *Nolan* v. *Railroad*, *supra*. Under these circumstances, while accepting the general doctrine, there would seem to be neither occasion nor justification for going into refinement to invoke it, where the universal sense of justice must revolt from its application.

Accepting the doctrine of *Farwell* v. *Railroad* in its integrity, it has no application to such a combination of circumstances as conspired to produce the plaintiff's injury. There, an engineer was injured by the careless omission of a switch-tender to change the switch in his charge. The omission related to a mere detail of the service, after a reasonably safe place and safe instrumentalities had been provided by the master, and not to the fundamental duty of providing and maintaining a safe place in the primary and inherent sense. Again, the engineer was proceeding in the usual course, and not under the special direction of the master's foreman in charge, and in reliance upon his express assurance, as well as previous practice, of warning against the particular danger causing the injury. Finally, the switch-tender was the merest fellow-servant in title and rank, as well as from the nature of the duty he was performing. He was not the master's foreman in charge, whose order the engineer was bound to obey, and at the time of the injury was obeying upon assurance, accompanying the order, that he would be taken care of — an assurance which, in the present case, could have no other meaning than that the servant would be warned. While the switch-tender, under the circumstances of the case, was held to be a fellow-servant for whose negligence the master was not responsible, it is noteworthy that the eminent jurist, after reaching this result, added the following significant words: "In coming to the conclusion that the plaintiff in the present case is not entitled to recover, considering it as in some measure a nice question, we would add a caution against any hasty conclusion as to the application of this rule to a case not fully within the same principle. It may be varied and modified by circumstances not appearing in the present case." Evidently the so-called author of the doctrine did not understand that he was laying down a hard-and-fast rule, applicable to all cases. That his successors in the administration of justice have not so understood is evident from the limitation and development which the doctrine has undergone during the years which have followed. In the liberty which he invited, the principle has been since "varied and modified" to a great extent, and the process is still going on. It is no longer the doctrine that all employees of a common master in a common enterprise, excepting those charged with supreme control and management, like boards of directors, are fellow-servants, regardless of rank or service. *Fifield* v. *Railroad*, 42 N. H. 225, 236 ; *Hard* v. *Railroad*, 32 Vt. 473 ; *Columbus etc. R'y* v. *Arnold*, 31 Ind. 174. Nor is it any longer true, that having in the first instance furnished the servant a safe place and safe appliances and competent servants to keep them so, the master's obligation is discharged (*Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326 ; *Waller* v.

*Railway,* 2 H. & C. 102; *Searle* v. *Lindsay,* 11 C. B. N. S. 429; *Hard* v. *Railroad,* 32 Vt. 473; *Albro* v. *Canal Co.,* 6 Cush. 75; *King* v. *Railroad,* 9 Cush. 112, 129; *Gillshannon* v. *Railroad,* 10 Cush. 228; *Johnson* v. *Company,* 135 Mass. 209, 212, 213); but the law now is, that the master, by the contract of employment, assumes certain personal duties to the servant, not only in respect to original equipment but subsequent maintenance and management, and that whoever represents him in the discharge of any of these duties — whatever his title or rank — is to that extent the master's agent, for whose negligence the master is responsible to the servant, just as he would be responsible if the negligence were directly his own. *Jaques* v. *Company,* 66 N. H. 482; *Davis* v. *Railway,* 55 Vt. 84, 89; *Hopkins* v. *O'Leary,* 176 Mass. 258; *Haskell* v. *Anchor Works,* 178 Mass. 485; *Nall* v. *Railway,* 129 Ind. 260.

In holding that the master in the present case discharged the manifest and admitted duty to warn the plaintiff by delegating it to the foreman in charge, and in citing to that effect the case of *Wilson* v. *Merry,* now so generally repudiated (*Jaques* v. *Company,* 66 N. H. 482; *Davis* v. *Railway,* 55 Vt. 84, 91, 94,— 51 L. R. A. 564–572), the majority would appear to have given too little weight to the process of change to which reference has been made. Be this as it may, the fact remains that the change has come. True, the line separating the duties which may be delegated so as to absolve the master, from those which may not, is not yet clearly defined, and in the process of development much conflict of authority has arisen. Yet through all the confusion a tendency is clearly manifest to enlarge the latter class. In view of this confusion and tendency, the concrete question here presented, whether the duty to warn (which was omitted to the plaintiff's injury) was of the former or the latter class, should be determined with reference to its own peculiar circumstances, and in accordance with what seems the better reason and the sounder authorities, whatever may have been the conclusions of other courts, at other times, and under other circumstances. Answering the question in this spirit, there is to my mind no room for doubt that the duty to warn, under the circumstances of the present case, was a personal duty incumbent upon the defendants by their contract of employment, for the negligent performance of which by their foreman in charge they are responsible.

The occasion for the warning did not arise from the transitory omission or commission of some fellow-servant. It was demanded by the nature of the work and the character of the place, as an original and permanent provision.

The danger to which the warning related was not a danger

which might or might not arise in the progress of the work — a mere detail of the service of dumping and tamping. *Perry* v. *Rogers*, 157 N. Y. 251. From the situation and nature of the service, it was an inevitable, inherent, and continuous danger, against which warning was absolutely necessary to the safety of the place, in an inherent, original, and continuous sense. *Belleville Stone Co.* v. *Mooney*, 61 N. J. Law 253. It was as inherently and permanently necessary as any instrumentality demanded by the service, for the safety of the place, of whatever name or kind. *Haskell* v. *Anchor Works*, 178 Mass. 485. It was so obviously indispensable that it must have been contemplated in the contract of employment. It was far more necessary than the warning required in the form of telltales, to protect against the danger of overhead bridges, because in the trench, where he could not see, the plaintiff was powerless to protect himself. No one will contend that the master relieves himself by furnishing a competent person to see that warnings are given by sufficient telltales. *Hardy* v. *Railroad*, 68 N. H. 523; *Wallace* v. *Railroad*, 138 N. Y. 302. Can it alter the obligation of the master that the person to whom the duty to warn is delegated is to warn by voice instead of by keeping in repair some automatic contrivance? And can it be said that the duty to warn of approaching collision with an overhead bridge, by means of telltales, pertains to the safety of the place, while the duty to warn the plaintiff against burial beneath a load of earth and stones, by means of the foreman's voice, was only a detail of the service? The trench was no less a defective *place*, without the warning, than is an overhead bridge without an efficient telltale; and the defect is no less "inherent" in the former case than in the latter.

· I am unable to follow the refinement of reasoning which seeks to distinguish, in respect to the master's liability, between instrumental and vocal warning; in other words, between the negligence of a servant in failing to keep an automatic contrivance in repair when that is the method of warning, and forgetting to cry out when that is the system adopted. Nor can I grasp the proposition that a warning necessary to protect a brakeman from collision with an overhead bridge relates to the safety of the place, while a warning even more necessary to protect a servant working in a deep trench, from the equally recurring and inherent danger of being buried alive beneath loads of earth and stones, is, somehow, a mere detail of the service.

To prove that the warning in the present case did not relate to the safety of the place, but only to a detail of the service, the court say: "So long as in the work of filling the trench no earth was thrown into it in the plaintiff's vicinity, the place where he

was at work was safe." The same may as well be said of the overhead bridge. So long as no cars run through it, it is safe. This proposition proves nothing. The whole confusion arises from failure to recognize that a warning necessary to make the place and service safe is something apart and distinct from the service itself. *Belleville Stone Co.* v. *Mooney*, 61 N. J. Law 253. For instance, warning of approach to an overhead bridge is quite different from the act of the employees in drawing the train through the bridge. For collision and injury resulting from the negligent failure of the warning the master would be liable, because the warning was necessary to the safety of the place and hence an absolute duty of the master, of which he could not relieve himself by any process of delegation; but for collision and injury resulting after and in spite of warning, from the negligent starting of the train by the engineer or conductor, the master would not be liable (*Evansville etc. R. R.* v. *Holcomb*, 9 Ind. App. 198), because in such case the negligence would be the negligence of a fellow-servant in the discharge of an ordinary detail of the service. So, in the case at bar, the act of warning of the dumping of the earth and stones was one thing; the dumping itself quite another and different thing. The former was something manifestly and admittedly necessary to make the place and service safe, to start with; the latter related solely to the service itself. It follows, that for neglect to give warning that a load was to be dumped, the master is liable; while if the injury had resulted after and in spite of warning, from the negligence of one of the teamsters in the process of dumping a load, the master would not have been liable. All confusion is avoided, the true spirit of the contract of employment carried out, and complete justice done, by adopting the plain, just, and consistent rule that "a master's duty of giving notice to his servant of risks to which the latter will be exposed in the course of his employment, where such duty exists, is an absolute one, and is not performed by delegating it to a third person, who, though competent for that purpose, fails to give the proper information." *Wheeler* v. *Company*, 135 Mass. 294. No reason can be suggested why, if the danger is inherent in the service and certainly recurring, and warning with the recurrence of the danger is absolutely necessary in order to make the working-place safe, the master should not be required to repeat the warning with each recurrence of the danger. Warning at the outset, of the general perils of the service, does not fill out the measure of the master's duty (Bail. Pers. Inj., *ss.* 2688, 2689, 2692, 2693); certainly not under such circumstances as are presented in this case.

In *Belleville Stone Co.* v. *Mooney*, 61 N. J. Law 253, the plaintiff was employed by the defendants to work in a quarry, and was

injured by the neglect of the foreman to give warning of a blast, according to his practice. The court say: "Under the charge of the trial court and the verdict of the jury, we must regard it as established that the plaintiff's injury resulted from the neglect of the foreman to give timely warning, and without any contributory negligence on the part of the plaintiff. This presents the real question of law in the case, which is, whether the negligence of the foreman in this respect is imputable to the defendant, the common master of the foreman and the plaintiff. . . . The danger of blasting was one frequently recurring, and its occurrence could always be foreseen, not by the workmen scattered about the quarry, but by any person charged with the duty of watching for it. If the danger was not foreseen, and proper warning given, the quarry became an unsafe place for the workmen, but it was made reasonably safe if such warning was given. It seems clearly to follow, that on him whose duty it was to take care that the place should be kept safe was cast the duty of giving timely warning. We conclude, therefore, that it was part of the defendant's duty to the plaintiff that proper care should be exercised in giving warning of an expected blast. . . . As the defendant's responsibility extended beyond the selection of an agent, and included the warning itself, it must answer for negligence in the giving of warning, no matter how fit was the chosen agent."

In *Gerrish* v. *Ice Co.*, 63 Conn. 9, the negligence of the defendants' overseer, who had charge of the work of raising ice from a lake to an ice-house, by means of an elevator, operated by a steam engine, in failing to give a signal necessary for the plaintiff's safety, was held to be the negligence of the master. In this case the master had not only procured a competent person to give the signal, but had adopted a rule to that end. The court held that performance of the duty to warn could not be discharged by the simple giving of an order, its execution being entrusted to another. "The designation of an agent, however fit and competent that agent may be, . . . does not fill out the sum of the master's obligation, nor serve to relieve the master from further responsibility. Until the agent thus selected and empowered in fact acts up to the limit of the duty of his master to act, the master's duty is not done. The master's duty requires performance. He may at his option perform in person, or delegate performance to another. In either case reasonable care must be exercised in the doing of the act required to be done by the master."

In *Evansville etc. R. R.* v. *Holcomb*, 9 Ind. App. 198, the plaintiff, a car repairer at work on the defendants' repair track, was struck by a car pushed by a switch-engine which came upon the track without his knowledge. Held, that the defendants could not

relieve themselves of liability by showing that their yardmaster had directed a brakeman to notify all employees at work on the track of the approach of this engine. In the course of the opinion the court say: "He [the person injured] was simply called upon to work where directed. While thus engaged at the work and in a place to which he had been especially assigned,—at work necessarily requiring close attention,—he had a right to expect that his master would use reasonable care to protect him, by keeping safe the place where he was working. . . . The only precaution to be taken by the master was the giving of the notice, and unless the notice was given there was no protection whatever. If reasonable care was exercised in giving this notice, and then, for some unforeseen reason, harm still resulted to appellee, appellant might claim to be relieved; but the giving of this notice was appellant's duty, and any neglect in giving it was appellant's neglect." The opinion is exhaustive and instructive. To discredit it, it has been suggested that it is not the opinion of the supreme court; but examination discloses that it was based upon and fully sustained by the decisions of that court. *Cincinnati etc. R'y* v. *Lang*, 118 Ind. 579; *Taylor* v. *Railroad*, 121 Ind. 124; *Rogers* v. *Leyden*, 127 Ind. 50; *Nall* v. *Railway*, 129 Ind. 260; *Louisville etc. R'y* v. *Hanning*, 131 Ind. 528.

To the same effect, and directly supporting the proposition that the negligence of the foreman in the present case was the negligence of the master, are the following: *Floettl* v. *Railroad*, 41 N. Y. Supp. 792; *Mullane* v. *Railroad*, 46 N. Y. Supp. 957; *McGovern* v. *Railroad*, 123 N. Y. 280, 288; *Cheeney* v. *Steamship Co.*, 92 Ga. 726; *Mississippi etc. Co.* v. *Ellis*, 72 Miss. 191; *Railway Co.* v. *Triplett*, 54 Ark. 289; *Lake Shore etc. R'y* v. *Lavalley*, 36 Ohio St. 221; *Railway Co.* v. *Murphy*, 50 Ohio St. 135; *Kirk* v. *Senzig*, 79 Ill. App. 251; *Harrison* v. *Railroad*, 79 Mich. 409; *Luebke* v. *Railway*, 59 Wis. 127,—48 Am. Rep. 483; *Erickson* v. *Railroad*, 41 Minn. 500; *Carlson* v. *Company*, 63 Minn. 428; *Moore* v. *Railway*, 85 Mo. 588; *Dayharsh* v. *Railway*, 103 Mo. 570; *Ring* v. *Railway*, 112 Mo. 220; *Anderson* v. *Company*, 8 Utah 128; *Tedford* v. *Company*, 134 Cal. 76; *Hartvig* v. *Company*, 19 Or. 522; Bail. Pers. Inj., s. 2674; Bus. Pers. Inj., s. 202; 12 Am. & Eng. Enc. Law (2d ed.) 950, 955, 969; numerous cases cited in 51 L. R. A. 590, 592, 593.

Our own cases are entirely consistent with this view. *Foss* v. *Baker*, 62 N. H. 247; *Nash* v. *Company*, 62 N. H. 406; *Jaques* v. *Company*, 66 N. H. 482; *Griffin* v. *Company*, 67 N. H. 287; *Collins* v. *Car Co.*, 68 N. H. 196; *Burnham* v. *Railroad*, 69 N. H. 280; *Lintott* v. *Company*, 69 N. H. 628, 632; *Bennett* v. *Warren*, 70 N. H. 564, 568.

Attention has been called to decisions of the supreme court of the United States, in support of the nonsuit in this case. *Northern etc. R. R.* v. *Peterson*, 162 U. S. 346; *Martin* v. *Railroad*, 166 U. S. 399. Attention might also have been called to *Alaska etc. Co.* v. *Whelan*, 168 U. S. 86, to the same purpose and with even greater effect, since that case more nearly resembles the present one. It is weakened, however, as an authority, by the fact that the chief justice and Mr. Justice *Harlan* dissented, and by the further fact that, like the opinion of the majority in the present case, it cites, and evidently rests upon the doctrine, of *Wilson* v. *Merry, supra*, which has been elsewhere repudiated so far as it applies to circumstances like those in this case. *Jaques* v. *Company*, 66 N. H. 482; *Davis* v. *Railway*, 55 Vt. 84, 89, 94; *Rogers* v. *Company*, 144 Mass. 198; *Ryalls* v. *Mills*, 150 Mass. 190, 194; Bus. Pers. Inj., *s.* 193. It is not improbable that more of the authorities seeming to sustain the nonsuit in the present case were the result of applying the doctrine of *Wilson* v. *Merry* without sufficiently regarding the modification it has undergone by the trend of modern authority. See *Stevens* v. *Chamberlin*, 100 Fed. Rep. 378, 383, a suit arising in this district and decided in the circuit court of appeals, where *Wilson* v. *Merry* is expressly recognized as the basis of the federal decisions. See, also, 51 L. R. A. 564–572, where the repudiation of the doctrine of *Wilson* v. *Merry* by the great weight of American authority is clearly shown.

The weight of reason, precedent, and analogy, as I view them, leads to the conclusion, that when, as is conceded in the present case, the place where the master directs the servant to work is such that warnings are necessary in order to make it reasonably safe, having reference to the service required, it is the duty of the master, in the exercise of ordinary care, to give such warnings; and this duty is no more dischargeable by delegation to competent servants than is the general duty, incumbent upon the master, to provide a reasonably safe place and appliances. In the performance of such duty the servant represents the master, and his negligence is the negligence of the master. We see no logical middle ground between this proposition and the general proposition, indorsed by some philosophical writers, but overwhelmingly rejected by courts, that the master's duty to the servant is in all cases performed when he has entrusted it to competent subordinates, and supplied the means and appliances reasonably necessary for the purpose.

2. While the conclusion reached would have been the same had the person to whom the duty of warning was delegated been a common servant instead of the foreman in charge, it does not follow that the latter circumstance is unimportant in the present case.

On the contrary, with its associated facts it furnishes an additional and decisive reason why the motion for nonsuit should not have been granted. 51 L. R. A. 590, 591, 592, and authorities cited. The general rule, that the master's liability to one person in his employment for the negligence of another person in the same employment is to be determined by what the latter is doing rather than by the official character in which he is doing it, is not questioned. But while such is undoubtedly the general rule, the question of rank is not always and altogether without importance. Upon principle it seems clear that when, as in the present case, the master's foreman in charge, in the prosecution of the enterprise committed to his superintendence, directs a servant to do a particular work in a particular place, assuring him that signals indispensable to his safety will be given, such direction and assurance are the acts of the master; likewise, any neglect of the foreman in the giving of such direction, or in the fulfillment of such assurance. 48 L. R. A. 542–547; 51 L. R. A. 590. The assurance in the present case was an inseparable part of the order. It would have been implied from the nature of the case had it not been expressly given (*Louisville etc. R'y* v. *Hanning, supra*); also, from the previous practice. *Belleville Stone Co.* v. *Mooney, supra.* In fixing the responsibility for the injury, the command and assurance of the foreman, which were clearly acts of the master (*Lintott* v. *Company*, 69 N. H. 628, 632; *Burnham* v. *Railroad*, 69 N. H. 280, 284; 48 L. R. A. 542–547; 51 L. R. A. 590; 20 Am. & Eng. Enc. Law 120; 10 *Ib.* 957), cannot be dissociated from his subsequent neglect to fulfill the assurance. If he was the master's agent for the purpose of the command and assurance, by which the plaintiff's services in a perilous situation were secured to the master, he was also the master's agent for the purpose of the servant's protection, in accordance with the spirit of such command and assurance. He was not the master's agent for the former purpose, and a mere fellow-servant for the latter. "The law cannot keep pace with such protean changes." *Nall* v. *Railway*, 129 Ind. 260.

In *Taylor* v. *Railway*, 121 Ind. 124, Torrence, a master mechanic in charge of the men, machinery, and work in a railroad shop, ordered a brakeman to disconnect the equalizer of one of the locomotives, and while the brakeman was engaged in so doing, under the direction of the master mechanic, the latter negligently moved the equalizer so that it fell upon and severely injured the workman. In the course of a strongly reasoned and unanimous opinion for reversal, by *Elliott*, C. J., it was said: "Nor can it be held, without infringing the principles of natural justice, that if he who is authorized to give the command makes its execution unsafe,

the employee, whose duty it is to obey, has no remedy for an injury received while doing what he was commanded to do. Nor do the better reasoned authorities justify such a conclusion."

With the reasoning of this case, if not with its application, our own decisions are entirely consistent. They fully justify its application to facts like those here. *Foss* v. *Baker*, 62 N. H. 247 ; *Nash* v. *Company*, 62 N. H. 406 ; *Jaques* v. *Company*, 66 N. H. 482 ; *Griffin* v. *Company*, 67 N. H. 287 ; *Burnham* v. *Railroad*, 69 N. H. 280; *Lintott* v. *Company*, 69 N. H. 628, 630. If these cases do not settle the question in accordance with our contention (*Lintott* v. *Company* ; *Burnham* v. *Railroad*), they at least leave it open (*Griffin* v. *Company*, 67 N. H. 287) and the way clear to hold, in accordance with what would seem to be a common-sense view : that when a person entrusted by the master with his power of command, in the exercise of that power and in the course of the work committed to his superintendence, orders a servant to work in a place, where, from the inherent character of the place and the nature of the work, signals are necessary in order to make it reasonably safe, assuring him that signals will be given, in giving such command and assurance, and in giving or omitting the signals promised, he represents the master, and the master is responsible for his neglect in these respects. Whether this result is reached by regarding the rank of the foreman, or the nature of the service committed to him, is a matter of nomenclature and quite immaterial in the present case. It is easy to understand that a foreman in charge, with respect to his acts of common labor in the ordinary course, is a fellow-servant; but it is difficult to see how he can be so regarded respecting commands and assurances given in his character as foreman, and with respect to his negligence in the giving of such commands and the fulfillment of such assurances, when, as in the present case, the command is only such as he is authorized to give and the servant is expected to obey, and the assurance is merely that a particular thing will be done, which it is the "manifest duty" of the foreman to have done, as the official representative of the master.

3. From the position in which the plaintiff was working, and by the foreman's order, the dumping of each load was a concealed danger in the truest sense. The cases all agree that it is the personal and absolute duty of the master to give warning of such dangers. *Collins* v. *Car Co.*, 68 N. H. 196 ; *Lintott* v. *Company*, 69 N. H. 628, 632 ; *Bennett* v. *Warren*, 70 N. H. 564 ; *Wheeler* v. *Company*, 135 Mass. 294 ; *Coombs* v. *Cordage Co.*, 102 Mass. 573 ; 20 Am. & Eng. Enc. Law 95. The present case is stronger in this respect than *Belleville Stone Co.* v. *Mooney*, *Evansville etc. R. R.* v. *Holcomb*, *Louisville etc. R'y* v. *Hanning*, and *Gerrish* v.

*Ice Co.*, because in these cases there would seem to have been a possibility of the servants guarding themselves, while in the present case the concealment was such that the servant was absolutely dependent upon the warning.

4. It is considered by the majority that the defendants would have been liable if the foreman in the present case had "failed to make any provisions" for warning. It is difficult to see why the defendants should be less liable for the foreman's neglect of a practice which he had introduced than for neglecting to establish such practice.

5. It is also conceded that the defendants would have been liable if the foreman had been otherwise so engaged as to render him incompetent for the duty to warn. Was a foreman "in charge of a whole gang of teamsters and shovelers," with the cares and distracting duties incident to the general superintendence incumbent upon him, a competent person to discharge a special duty, upon the unfailing performance of which so much depended? Might fair-minded men differ on this question?

6. While the discussion on both sides has so far proceeded upon the theory that the master had provided that the foreman should give the omitted warning, and the conclusion herein reached is based upon that idea, it is worthy of note that no special provision for warning, either by rule, appointment, or otherwise, appears to have been made by the master. As the case stands, it may have been, and very likely was, the fact, that the warnings given were the voluntary undertaking of the foreman, in the exercise of his general power of superintendence. In this view the master would be liable, according to authorities conceded by the majority to be sound and cited by them. *Cheeney* v. *Steamship Co.*, 92 Ga. 726; *Luebke* v. *Railway*, 59 Wis. 127,—48 Am. Rep. 483; *Hartvig* v. *Company*, 19 Or. 522.

7. It appears to be generally accepted that the liability and exemption of the master rest upon implied contract. Poll. Torts 90. By no process of reasoning can the plaintiff be said to have impliedly contracted to assume a concealed danger against which the master's representative had expressly assured him he would be protected by warning, and against which he was powerless to guard by any vigilance of his own. On the other hand, a contract by the master to warn the plaintiff finds the strongest support in the manifest and conceded necessity for warning, the previous practice of warning, and the foreman's assurance of warning.

The plaintiff should have been permitted to go to the jury, and his exception should be sustained.